UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  c/o United States Attorney's Office<br>    for the District of Columbia<br>    Civil Division<br>    555 Fourth Street, N.W.<br>    Washington, D.C. 20530<br><br>              Plaintiff,<br><br>        v.<br><br>WILLIAM P. TEDARDS, JR.<br>YVONNE TEDARDS<br>    6470 Silversmith Place<br>    Tucson, AZ 85750<br><br>              Defendants. | Civil Action No. |

## COMPLAINT

The United States of America, by the undersigned attorneys, alleges as follows:

NATURE OF THE ACTION

1. This is an action by plaintiff, United States of America (the "Government"), on behalf of the Office of Foreign Missions ("OFM") of the United States Department of State (the "State Department") against defendants, William P. Tedards, Jr., and Yvonne Tedards, in connection with certain premises located at 3410 Garfield Street, N.W., Washington, D.C. (the "Premises").

2. This action arises from Defendants' breach of the lease agreement pertaining to the Premises due to failure to pay rent and fees. It also arises from Defendants' unlawful uses of the benefits of a foreign mission, namely, property of the government of Iran ("Iran"), in violation of the Foreign Missions Act of 1982, 22 U.S.C. § 4301 et seq.("FMA"). The Government took

custody of the Premises, which had served as a diplomatic residence belonging to the Iranian mission, on behalf of Iran following the severance of diplomatic ties with Iran in 1980. OFM has maintained, managed, protected and preserved the Premises at all times relevant to this suit pursuant to the Vienna Convention on Diplomatic Relations ("VCDR"), 23 U.S.T. 3227, 500 U.N.T.S. 95, TIAS 7502, the FMA, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq. ("IEEPA"), and authorities thereunder.

## PARTIES

3.  The plaintiff is the United States of America on behalf of its agency, the United States Department of State, Office of Foreign Missions, which is the trustee-landlord for the Premises.

4.  Defendants, William P. Tedards, Jr., and Yvonne Tedards, are former tenants of the Premises.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1345 because the United States is the plaintiff in this action and by virtue of the FMA. See 22 U.S.C. §§ 4301(a), 4311.

6.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because this is the district in which the events giving rise to the claim occurred and in which the property that is the subject of the action is situated.

## THE INTERNATIONAL TREATIES AND STATUTORY SCHEMES

A.   The Foreign Missions Act of 1982

7.   Pursuant to the FMA, 22 U.S.C. § 4301 et seq., "the operation in the United States of foreign missions ... is a proper subject for the exercise of Federal jurisdiction." Id. § 4301(a). The FMA provides, inter alia, that "it is the policy of the United States ... to facilitate the secure and efficient operation in the United States of foreign missions ... and to assist in obtaining appropriate benefits, privileges, and immunities for those missions ... in accordance with international law." Id. § 4301(b). The State Department's actions pursuant to the FMA are grounded in national security and foreign policy concerns and issues of reciprocity among nations. See id. § 4301(b).

8.   The FMA defines a "foreign mission" as "any mission to or agency or entity in the United States which is involved in diplomatic, consular, or other activities of, or which is substantially owned or effectively controlled by ... a foreign government ... including any real property of such a mission" with real property defined as "any right, title, or interest in or to, or the beneficial use of, any real property in the United States ... or other building." Id. §§ 4302(a)(3), (4).

9.   Under the FMA, "[t]he United States, acting on its own behalf or on behalf of a foreign mission, has standing to bring ... an action to obtain compliance" with the FMA. Id. § 4311(a).

10.  The Secretary of State (the "Secretary") is empowered under the FMA to determine the treatment to be accorded to a foreign mission in the United States. Id. § 4301(c); see § 4302(a)(6). The FMA provides that "a denial by the Secretary involving a benefit of a foreign

mission within the jurisdiction of a particular State or local government shall be controlling." Id. § 4307.

11. OFM was established under the FMA pursuant to the Secretary's authority. Id. § 4303. OFM, inter alia, carries out the purposes of the FMA, as determined by the Secretary, and provides and assists in the provision of benefits for or on behalf of a foreign mission under the FMA. See id. § 4303(4). OFM also performs such other functions as the Secretary determines are in furtherance of the policy of the FMA.

B.  The Vienna Convention on Diplomatic Relations

12. The VCDR is a multilateral treaty to which the United States and Iran (and numerous other nations) are parties. The VCDR governs the conduct of diplomatic relations, diplomatic posts and their property and personnel. Article 45 of the VCDR provides as follows:

> If diplomatic relations are broken off between
> two States, or if a mission is permanently or
> temporarily recalled:
>
> (a) the receiving state must, even
> in the case of armed conflict, respect
> and protect the premises of the mission,
> together with its property and archives . . .

VCDR art. 45 (emphasis added).

C.  The International Emergency Economic Powers Act

13. In 1980, the Government severed diplomatic ties with Iran and pursuant to Article 45 of the VCDR and the IEEPA, 50 U.S.C. § 1701 et seq. and applicable executive orders, respectively, took custody of the Premises and froze the assets of Iran located in the United States, including its diplomatic and consular properties (collectively, the "Iranian Diplomatic Properties").

14. Under IEEPA, 50 U.S.C. § 1701 et seq., and regulations promulgated thereunder, control and preservation of the Iranian Diplomatic Properties are licensed by the United States Department of Treasury (the "Treasury Department") to OFM. See 31 C.F.R. § 535.203(e) (1980).

15. At all times pertinent to this suit, OFM has controlled, protected, managed and leased the Premises pursuant to the FMA, the VCDR, IEEPA and the terms of a license granted to OFM by the Treasury Department, Office of Foreign Assets Control.

16. Under the FMA, the Secretary is empowered to "protect and preserve" and assume responsibility for the maintenance of the Iranian Diplomatic Properties, including the Premises, as licensed under IEEPA. See 22 U.S.C. § 4305(c)(1). Acting under the FMA, the Secretary has continued United States custody, control and protection of the Premises.

17. Under the License, OFM accounts periodically to the Treasury Department, inter alia, as to the income stream generated by each of the Iranian Diplomatic Properties, including the Premises.

18. In addition, under the FMA, "[a]ssets of or under the control of the Department of State, wherever situated, which are used by or held for the use of a foreign mission shall not be subject to attachment, execution, injunction, or similar process, whether intermediate or final." 22 U.S.C. § 4308(f).

19. The Premises were the residence of the former Iranian Ambassador. Accordingly, the Premises are a foreign mission under the terms of the FMA. Id. §§ 4302(a)(3), (4). The possession, preservation, control, benefits and use of the Premises are governed by the FMA, the VCDR, and IEEPA under terms and conditions prescribed by OFM.

## DEFENDANTS' WRONGFUL ACTS

20. On or about June 18, 2002, OFM entered into a written lease with Defendants for their use and occupancy of the Premises as a single-family residence. The lease was for a three year term, beginning June 1, 2002 and extending through May 31, 2005. A true copy of the Lease is attached hereto as Exhibit A and is incorporated herein by reference. Under the terms of the lease agreement, defendants were to pay $4,900 per month during the first year beginning with the commencement of the lease. Thereafter, defendants were to pay rent as follows: $5,150 per month from June 1, 2003 through May 31, 2004, and $5,400 per months from June 1, 2004 through May 31, 2005. The rent payment was due on the first day of the month. Rent received later than the tenth day of the month was to be accompanied by a late fee equivalent to 5% of the rent payable for such month. Defendants paid a security deposit of $3,500.

21. Under the terms of the lease agreement, defendants were to maintain and at the end of the tenancy return the Premises and all equipment fixtures therein in as good condition as when defendants took possession, ordinary wear and tear excepted, failing which OFM was entitled to restore the Premises, equipment and fixtures to such condition. Defendants were to pay the cost of any such restoration upon request.

22. Starting in January 2004, defendants stopped paying rent under the lease. Defendants also failed to pay the required late fees.

23. Defendants failed to pay $5,150 in rent during the months of January, February, and May 2004, and $5,400 in rent during the month of June 2004. Defendants failed to pay late fees of $257.50 during the months of January, February and May 2004, and a late fee of $270.00 during the month of June 2004.

24. During the month of March 2004, defendants paid their full rent. During the month of April 2004, defendants made a partial rent payment of $3,423.33. Defendants did not pay the remaining amount of $1,984.17 for April 2004; nor did defendants pay the late fee of $99.20 for April 2004.

25. On or about June 15, 2004, OFM delivered by certified mail and by facsimile to defendants a letter containing a notice of default under the lease's terms and giving defendant ten days to pay overdue payments of $24,345.07. See June 15, 2004 letter attached as Exhibit B.

26. On or about July 21, 2004, no payment having been received, OFM sent defendants a letter indicating that OFM was terminating the lease as of August 23, 2004 and that OFM expected defendants to vacate the Premises on that date. See July 21, 2004 letter attached as Exhibit C.

27. On or about August 31, 2004, OFM received a letter from defendants notifying OFM that defendants had vacated the Premises on July 31, 2004. Defendants failed to provide prior notice to OFM prior to vacating the Premises, as required under the lease.

28. On or about September 9, 2004, OFM delivered a letter to defendants acknowledging that defendants had vacated the Premises. OFM informed defendants that they owed $36,098.12 in back rent and late fees, from January 2004 through August 2004. In the letter, OFM also notified defendants that OFM had conducted a walk-through of the Premises and had determined that the Premises had been left in a state of disrepair. OFM notified defendants that it had identified various items that needed restoration, the cost of which defendants would be required to pay under the terms of the lease. OFM informed defendants that it was retaining defendants' $3,500 security deposit as a credit against the cost of restoration.

29. On or about January 12, 2005, OFM delivered a letter to defendants informing them that the cost of restoration had been calculated at $11,572.84. Accordingly, the total amount owed by defendants was $47,670.96.

30. As of the date of this complaint, defendants have not paid any portion of the $47,679.96 owed to OFM. Subtracting the security deposit retained by OFM ($3,915.80 including interest), defendants currently are in arrears for $43,764.16 in rent and fees due to their breach of the Lease.

## COUNT I

### Common Law Breach Of Contract

31. The Government repeats and realleges paragraphs 1 through 30 of the complaint as if fully set forth herein.

32. Defendants defaulted under the Lease by failing to pay the rent and fees required in return for occupancy of the Premises. Defendants owe OFM $43,764.16 for their occupancy of the premises up until the termination of the lease on August 23, 2004.

33. Defendants have a continuing obligation to pay this sum, as under the lease defendants agreed to "continue to be responsible for rent accrued prior to such termination as well as for all other obligations that accrued under this Lease prior to such termination."

## COUNT II

Pursuant To The FMA, 22 U.S.C.
§ 4301 et seq., Against Defendant For
Unjust Enrichment

34. The Government repeats and realleges paragraphs 1 through 33 of the complaint as if fully set forth herein.

8

35. Under the FMA (see 22 U.S.C. §4305(c)(1)), article 27 of the VCDR and IEEPA, the Secretary protects and preserves the Premises on behalf of Iran.

36. Defendants unlawfully availed themselves of the benefits of the Premises in violation of the FMA, by not honoring the lease and by not paying rent and fees required under the lease.

37. Through their unlawful use and benefit of the Premises, Defendants unjustly enriched themselves by the amount of $43,764.16.

**Wherefore**, plaintiff, United States, prays that judgment be entered in its favor and against the defendants, and that the plaintiff is entitled to:

(a) unpaid rent and fees to be determined at time of trial;

(b) costs and disbursements of this action; and

(c) such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Kenneth L. Wainstein
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/ R. Craig Lawrence
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

/s/ Brian J. Sonfield
BRIAN J. SONFIELD, D.C. Bar # 449098
Assistant United States Attorney
Judiciary Center Bldg., Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 514-7143