UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| c/o United States Attorney's Office | ) | |
| for the District of Columbia, | ) | |
| Civil Division | ) | |
| 555 Fourth Street, N.W. | ) | |
| Washington, D.C. 20530 | ) | |
| | ) | Civil Action No.: |
| Plaintiff, | ) | 1:05-CV-00991-JGP |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| WILLIAM  P.  TEDARDS,  JR.,  AND | ) | |
| YVONNE TEDARDS, | ) | |
| 6470 N. Silversmith Place | ) | |
| Tucson, AZ 85750 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER AND COUNTERCLAIM

Defendants answer the complaint, alleging as follows:

1.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 1.

2.     Defendants deny the averments of the first sentence of Paragraph 2 and aver that the action arises principally from the prior material breach of Plaintiff.

1

Defendants do not have knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 2.

3.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 3.

4.     Defendants admit the averments of Paragraph 4.

5.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 5.

6.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 6.

7.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 7.

8.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 8.

9.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 9.

10.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 10.

11.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 11.

12.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 12.

13.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 13.

14.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 14.

15.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 15.

16.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 16.

17.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 17.

18.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 18.

19.     Defendants do not have knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 19.

20.     Defendants deny the averments of the first and last sentences of Paragraph 20 and aver that the lease relationship between plaintiff and defendants began in April of 1996, when the security deposit of $3,500.00 was made, and ran

continuously until July 31, 2004, when the defendants vacated the premises. Defendants admit the remainder of the averments of Paragraph 20.

21.   Defendants admit the averments of Paragraph 21.

22.   Defendants admit the averments of Paragraph 22.

23.   Defendants admit the averments of Paragraph 23.

24.   Defendants admit the averments of Paragraph 24.

25.   Defendants admit the averments of Paragraph 25.

26.   Defendants admit the averments of Paragraph 26.

27.   Defendants admit the averments in the first sentence of Paragraph 27. Defendants deny the averments of the second sentence and aver that no prior notice of intention to vacate was necessary when Plaintiff had elected to terminate the lease.

28.   Defendants admit the averments in the first sentence of Paragraph 28. Defendants deny the remaining averments of Paragraph 28 and aver (a) that the premises were left in better condition than when delivered by Plaintiff in 1996; (b) that any disrepair in the premises was the result of faulty and neglectful maintenance of structural elements for which Plaintiff had responsibility; and (c) the *defendants* told Plaintiff, upon vacating, that Plaintiff could keep the entire security deposit from 1996, with all of the accumulated interest, to handle transitional expenses (e.g., repainting, filling in picture hanging holes).

ANSWER and COUNTERCLAIM
Case No. 05-CV-0091-JGP

29.     Defendants deny the averments of Paragraph 29 and aver that any "restoration" beyond the transitional expenses described in Paragraph 28 of this Answer was necessitated, not by the defendants, but by Plaintiff's negligence in fulfilling its own responsibilities.

30.     Defendants deny the averments of Paragraph 30.

31.     Defendants deny the averments of Paragraph 31.

32.     Defendants deny the averments of Paragraph 32.

33.     Defendants deny the averments of Paragraph 33.

34.     Defendants deny the averments of Paragraph 34.

35.     Defendants deny the averments of Paragraph 35.

36.     Defendants deny the averments of Paragraph 36.

37.     Defendants deny the averments of Paragraph 37.

## AFFIRMATIVE DEFENSES

1.     Plaintiff is not entitled to the measure of relief it seeks under its breach of contract theory because it has not performed its own obligations under the lease arrangement.

2.     Plaintiff is not entitled to the measure of relief it seeks under its breach of contract theory because it committed prior material breaches of the lease arrangement.

3.      Plaintiff is not entitled to the measure of relief it seeks under its unjust enrichment theory because it has unclean hands.

4.      Plaintiff has been unjustly enriched by significant necessary repairs that the Defendants made to the premises, and Defendants are entitled to offset the value of these repairs against any amounts owed to Plaintiff.

5.      Defendants have been financially damaged by prior material breaches of the lease arrangement by Plaintiff and are entitled to offset the amount of that damage against any amounts owed to Plaintiff.

**Wherefore,** Defendants pray that the Court enter a judgment:

(a)     determining the amount by which Plaintiff has been unjustly enriched;

(b)     determining the amount by which Defendants have been damaged by Plaintiff's prior material breaches;

(c)     offsetting the amounts determined in (a) and (b) against any amount due under the lease arrangement through July 31, 2004;

(d)     costs and disbursements of this action; and

(e)     such other and further relief as this Court deems just and proper.

**Defendants demand a trial by jury on all issues.**

ANSWER and COUNTERCLAIM
Case No. 05-CV-0091-JGP

# COUNTERCLAIM

Counterclaimants, William P. Tedards, Jr. and Yvonne Tedards, allege as follows:

## NATURE OF THE ACTION

1.      This is an action by Defendants, William P. Tedards, Jr. and Yvonne Tedards (hereafter referred to jointly as Counterclaimants), on behalf of themselves against Plaintiff, in connection with certain premises located at 3410 Garfield Street, N.W., Washington, D.C. (the "Premises").    The Premises, Counterclaimants' residence, is a large brick structure facing north, on the corner of Garfield Street, N.W. and 34th Place, N.W., with four floors and exterior balconies across the south side of the building on each floor above ground level.

2.      This action arises from Plaintiff's breaches of the lease arrangement pertaining to the Premises and the Plaintiff's unjust enrichment at the conclusion of the lease arrangement.

## PARTIES

3.      The Counterdefendant is the United States of America on behalf of its agency, the United States Department of State, Office of Foreign Missions (hereafter OFM), which is the trustee-landlord for the Premises.

4.      Counterclaimants, William P. Tedards, Jr. and Yvonne Tedards, are former tenants of the Premises, who occupied the Premises with four children.


## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1345 because the United States is the Plaintiff in this action and by virtue of the FMA.  See 22 U.S.C. §§ 4301(a), 4311.

6.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because this is the district in which the events giving rise to the claim occurred and in which the property that is the subject of the action is situated.


## THE LEASE RELATIONSHIP BETWEEN
## OFM AND COUNTERCLAIMANTS

7.      On or about March 7, 1996, Counterclaimants entered into a lease arrangement with OFM for use and occupancy of the Premises, which had been vacant for a significant period of time,  as a single residence.  The arrangement was for an indefinite period, beginning May 1, 1996, with annual percentage rent increases.  Apart from the annual percentage rent increases, the lease form was to be replaced every three years to allow for increases in the base rent.  Counterclaimants

provided OFM with a security deposit in the amount of $3,500.00 (rendered 05/01/96) to be held in an interest-bearing account.

8.    Under this arrangement, Counterclaimants occupied the premises as tenants from May 1, 1996 through July 31, 2004, a period of over eight years, during which time the base rent rose steadily from $3,500.00 per month to $5,400.00 per month, through three successive lease forms.

9.    Under the terms of this lease arrangement, OFM was responsible for maintaining all elements of the structure of the Premises and the fixtures and equipment in good repair and to keep the premises free of vermin and pests.  OFM failed to carry out these obligations throughout the period of the arrangement, as explained below.

10.    On or about February 5, 2003, OFM informed Counterclaimants that, for some unknown period of time, OFM would not have access to funds to carry out its maintenance and repair obligations.  Counterclaimants responded to OFM by telephone and said they would absorb OFM'S obligations for a while and would settle the account later.  OFM made no objection.

11.    For the remainder of the lease arrangement, Counterclaimants absorbed both their own expenses and the expense of carrying out OFM's obligations.  On or about January 9, 2004, Counterclaimants submitted a list of expenditures to OFM totaling $12,033.44, which was the amount that Counterclaimants had absorbed

through the end of December 2003 carrying out OFM's obligations. Counterclaimants requested an offset to the January rent to begin to reimburse them for these expenditures. In a telephone conversation a property manager for OFM indicated that OFM would probably refuse to recognize the expenditures or provide any offset.

12.     On or about January 14, 2004, Counterclaimants followed with a detailed record of the expenditures for the post-February 5, 2004, period through the end of December 2003.

13.     In February, Counterclaimants also did not make a rent payment to OFM because the list of expenditures submitted in January would more than offset the rent for the month of February, also. No communication was received from OFM during the month of February 2004.

14.     In March 2004 the heating and air conditioning equipment failed and one of the two main living floors of the Premises was without either. Repair or replacement of the heating and air conditioning equipment was not an expenditure Counterclaimants could undertake on top of all of the other expenditures they had absorbed for the OFM.

15.     On or about April 10, 2004, Counterclaimants incurred additional expenses that were properly OFM's and, with the heating and air conditioning system

10

gone on one floor and no previous response from OFM, withheld part of the rent for April.

16.    In May of 2004, the structure and equipment of the Premises continued to deteriorate with no action by the OFM.  Among other things, the air conditioning on the next floor began to malfunction and the attic fan ceased to function. Counterclaimants continued to withold the rent in an atempt to draw cooperation from OFM, but received no response.

17.    On or about June 15, 2004, OFM sent Counterclaimants a demand letter for past due rent with no offset.  This was the first communication from OFM since Counterclaimants' letter to OFM on January 14, 2004 and the earlier telephone conversation with the property manager.  After OFM sent Counterclaimants the June 15, 2004 letter, no one from OFM telephoned Counterclaimants or visited the Premises.

18.    On July 21, 2004, OFM sent Counterclaimants a second demand letter stating that Counterclaimants must meet the demand without offset or vacate the premises no later than Monday, August 23, 2004.  OFM did not indicate a walk-through or inspection of the Premises was necessary upon vacating.  After OFM sent Counterclaimants the July 21, 2004, letter, no one from OFM telephoned Counterclaimants or visited the Premises.

19.    Counterclaimants vacated the Premises on July 31, 2004. The Premises were left in a clean state, with carpets shampooed, landscape tended to, and all trash hauled away.

20.    On or about August 31, 2004, Counterclaimants sent the OFM a letter regarding vacating of the Premises and stating that the OFM could retain the entire security deposit, with the accumulated interest, to cover any minor repairs beyond normal "wear and tear".

21.    When the Counterclaimants vacated the premises, there was no damage to the premises attributable to the Counterclaimants. The structure and equipment of the premises were in need of repair because of the failure of OFM to carry out its obligations during the lease arrangement.

## OFM'S BREACH OF THE LEASE ARRANGEMENT

22.    During the entire period of the lease arrangement, up to the vacating of the premises on July 31, 2004, OFM failed to carry out its obligations with respect to maintenance and repair of the structure and equipment of the Premises. OFM failed to make repairs in a timely manner, failed to make structural repairs, failed to make repairs to the interior of the Premises, failed to repair or replace broken equipment, failed to repair or replace broken fixtures, failed to keep the interior of the premises dry during rainstorms, failed to keep the premises free of rodents and

vermin, and failed to keep the premises free of fire hazards. This culminated on
February 5, 2003, when OFM informed Counterclaimants that OFM, for an unknown
period of time, would not have access to funds for maintenance and repair expenses,
followed by OFM's subsequent refusal to make repairs or reimburse
Counterclaimants for same.

## OFM'S UNJUST ENRICHMENT

23.    Over the course of the lease arrangement, Counterclaimants made
substantial and necessary repairs to the Premises, necessitated by OFM's inability or
refusal to carry out its obligations. For example, Counterclaimants: paid $3,500.00
towards the necessary renovation of the kitchen; reinforced weak common area
ceiling beams so that light fixtures could be hung; replaced the non-functioning
security system with a fully operational system; replaced the non-functioning door
bell system with a basic door bell/intercom telephone system, with an intercom
telephone on each of the four floors; installed mini-blinds on approximately 32
windows of the Premises; installed necessary outdoor tile flooring to cover the
surface of each of the five balconies of the Premises, which were otherwise unusable
due to standing water, the type of tar roofing surface which covered the flooring of
the balconies, and the failure of OFM to make proper repairs; installed a computer
network hookup; re-landscaped the entire rear yard after a major storm uprooted a

massive tree which fell and destroyed the rear landscaping (among other things, this re-landscaping was necessary to prevent soil erosion after the OFM mistakenly removed several other trees which had been damaged but not uprooted);  replaced the dishwasher after it could no longer be repaired by a subcontractor; replaced the attic fan when it could not be repaired in the summer of 2003 (a non-functioning attic fan renders the top floor of the Premises unusable during the summer heat of Washington, D.C.); replaced the fence on the rear east side of the property, which was in disrepair; replaced the cooktop stove in the kitchen, after the glass top of the previous cooktop stove exploded and shattered glass; replaced most common-area light switches with three-way switches to ease the up and down/back and forth trips to turn lights on or off; replaced common area brown light switches, brown receptacles, and brown switchplates with white ones; repaired two sets of front doors (north and west) of the Premises, which were in deteriorating condition, to prevent them from rotting; made repairs in the brick walls which were necessary to stop water leaks into the Premises (e.g. a major leak into the master bedroom closet from the balcony and a ceiling cave-in the garage, also caused by a balcony leak causing chunks of wet drywall to fall); and completed several incomplete repairs left by OFM's subcontractors.

24.    Additionally, Counterclaimants took over payments for the exterminator pest control service.  OFM was unable to provide the Premises to Counterclaimants free of vermin and pests (large  quantities of ants and roaches entered the Premises,

ANSWER and COUNTERCLAIM
Case No. 05-CV-0091-JGP

infesting the kitchen and ground floor, caused by desintegrating brick mortar on the exterior of the Premises and poor seals of the first and second floor windows and doors), and an extermination service was necessary to keep the problem under control. Counterclaimants incurred an additional monthly expense of $75 for this once-a-month service after the February 5, 2005 letter. Some months required two visits at an additional cost.

25.    When the Counterclaimants vacated the Premises, they reminded Plaintiff of the many repaired/replaced items they had installed at the premises (e.g., the security system, the doorbell system, the window treatments, the landscaping, the balcony tiles, the outside rear light fixtures) and requested either a reasonable payment for same or an opportunity to remove those items which could be separated from the Premises without damage. OFM refused, stating that all of these items constituted "abandoned property."

## COUNT I

### Breach of Contract

26.    Counterclaimants repeat and reallege Paragraphs 1 through 25 of the counterclaim as if fully set forth here.

15

27.    OFM breached the lease arrangement by failing to perform its obligations with respect to the maintenance and repair of the structure and equipment of the premises.

28.    Counterclaimants have been damaged financially by OFM's failure to perform its obligations, in amounts to be determined by the proof at trial.


## COUNT II

### Unjust Enrichment

29.    Counterclaimants reallege Paragraphs 1 through 28 of the counterclaim as if fully set forth herein.

30.    OFM has been unjustly enriched by the extensive repairs to the premises that Counterclaimants had to make as a result of OFM's default on its obligations.

31.    Counterclaimants have been damaged financially by OFM's unjust enrichment, in amounts to be determined by the proof at trial.

**Wherefore,** Counterclaimants pray that the Court enter a judgment:

(a)    awarding Counterclaimants the amount by which OFM has been unjustly enriched;

(b)    awarding Counterclaimants the amount in which they have been damaged by OFM's breaches;

(c)    awarding Counterclaimants their costs and disbursements incurred in

this action; and

(f)    such other and further relief as this Court deems just and proper.

**Counterclaimants demand a trial by jury on all issues.**

DATED: July 11, 2005                           Respectfully submitted,

                                               WILLIAM P. TEDARDS, JR.
                                               YVONNE TEDARDS


                                               _____/s/_____
                                               William P. Tedards, Jr. (#143636)
                                               6470 N. Silversmith Place
                                               Tucson, AZ 85750
                                               TEL:  202 797-9135

                                               *Appearing Pro Se*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2005, a true copy of the foregoing **ANSWER and COUNTERCLAIM** was served by Email, on counsel of record as follows:

> Brian J. Sonfield
> U.S. Attorney's Office
> Civil Division
> 555 4th Street, NW
> Washington, D.C. 20530
> TEL: 202 514-7143
> FAX: 202 514-8780
> Email: brian.sonfield@usdoj.gov

_____/s/_____
William P. Tedards, Jr.
