## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,     ) | |
|     ) | |
| Plaintiff,     ) | |
|     ) | |
| v.     ) | Civil Action No. 05-0991 (JGP) |
| **WILLIAM P. TEDARDS, JR. and**     ) | |
| YVONNE TEDARDS,     ) | |
|     ) | |
| Defendants.     ) | |
|     ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, U.S. Department of State, Office of Foreign Missions [OFM or United States] respectfully moves for summary judgment under Fed. R. Civ. P. 56 because there is no genuine issue as to any material fact regarding plaintiff's claim for breach of contract, back rent, and restoration costs. Plaintiff is accordingly entitled to judgment as a matter of law.

In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities, statement of material facts, and supporting exhibits.

Respectfully submitted,

___/s/_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney

__/s/_____
PAUL A. MUSSENDEN,
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4812
Washington, D.C.  20530
(202) 305-4740

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0991 (JGP) |
| **WILLIAM P. TEDARDS, JR. and** | ) | |
| YVONNE TEDARDS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## <u>WITH RESPECT TO WHICH THERE IS NO GENUINE DISPUTE</u>

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1 (h),

Plaintiff, by and through its attorney, the United States Attorney for the District of

Columbia, respectfully submits the following statement of material facts with

respect to which there is no genuine issue.

### Relevant Lease Terms

| <u>Undisputed Facts</u> | <u>Supporting Evidence</u> |
|---|---|
| 1. Under the terms of the Foreign Missions Act of 1982 ("FMA"), the State Department's Office of Foreign Missions ("OFM") serves as landlord of the property owned by the state of Iran and located at 3410 Garfield Street, N.W., Washington, D.C. 20007. | 1. Ex. 3 [2002 Lease Agreement] at 6 under "Authority"; <u>see</u>, Foreign Missions Act ("FMA"), 22 U.S.C. § 4301 <u>et</u>. <u>seq</u>., the Vienna Convention on Diplomatic Relations ("VCDR"), 23 U.S.T. 3227, and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 <u>et</u>. <u>seq</u>. |

2.  On or about June 18, 2002, OFM entered into a written lease with Defendants for their use and occupancy of the premises as a single-family residence.  The lease was for a three year term, beginning June 1, 2002 and extending through May 31, 2005.

2. Ex. 3 [2002 Lease Agreement]]; see Ex. 6 [Deposition of Yvonne Tedards (YTedards) on Mar. 27, 2006] at 16:15-22, 18:4-19; Ex. 7 [Deposition of William Tedards (WTedards) vol.  I on Mar. 28, 2002] at 22:23-23:21.

3.  Under the terms of the lease agreement, defendants were to pay $4,900 per month during the first year beginning with commencement of the lease.  Thereafter, defendants were to pay rent as follows: $5,150 per month from June 1, 2003 through May 31, 2004, and $5,400 per months from June 1, 2004 through May 31, 2005.

3.  Ex. 3 [2002 Lease Agreement] at 1 ¶ 1 under "Rent"; see Ex. 6 [Depo. YTedards] at 19:5-18; Ex. 7 [Depo. WTedards vol.  I] at 23:25-24:7.

4.  The rent payment was due on the first day of the month.  Rent received later than the tenth day of the month was to be accompanied by a late fee equivalent to 5% of the rent payable for such month.  The lease agreement states, "In no event may any amount be subtracted from it [the rent amount]."

4.  Ex. 3 [2002 Lease Agreement] at 1 ¶ 2 under "Rent"; see Ex. 6 [Depo. YTedards] at 19-25; Ex. 7 [Depo. of WTedards vol.  I] at 24:8-14.

5. Defendants paid a security deposit of $3,500.

5. Ex. 3 [2002 Lease Agreement] at 2 ¶ 1 under "Security".

6. Under the terms of the lease agreement, at least sixty days written notice of intent to vacate must be given to the landlord for refund of the deposit.

6. Id. at ¶ 2.

7. The lease agreement also provides that in the event the tenant does not fully comply with the terms of the lease, the landlord may, following the expiration of the applicable grace and cure periods after notice, use the security deposit to pay amounts owed by the tenant pursuant to the lease.

7. Id.

8. Except for ordinary wear and tear, the lease agreement required defendants to maintain the property, return the premises and all equipment fixtures in as good condition as when defendants took possession.

8. Ex. 3 [2002 Lease Agreement] at 2 ¶ 1 under ("Maintenance Responsibilities & Costs.").

9. In the event tenants failed to meet this requirement, OFM was entitled to restore the premises, equipment and fixtures to their condition at the time of possession. Defendants were to pay the cost of any such restoration upon request.

9. Id.

10. Defendants were required to report any defect, damage, malfunction or breakage in writing to OFM.

10.  Ex. 3 [2002 Lease Agreement] at 3 ¶ 1 under "Repairs & Alterations"; see Ex. 6 [Depo. YTedards] at 20:22-25.

11.  At the tenant's expense, not to exceed $200 per repair, defendants were required to keep all parts of the premises, including appliances and equipment therein, in a state of good repair and cleanliness.  In the event tenant failed to maintain the premises as required, the lease provides for the landlord, following applicable grace and cure periods after notice, to make such repairs and charge the tenant the reasonable cost of the same.

11.  Ex. 3 [2002 Lease Agreement] at 3 ¶ 1 under "Repairs & Alterations"; see Ex. 7 [Depo. WTedards vol. 1] at 56:19-57:3.

12.  Tenants were expressly barred from making any alterations, changes, or additions to the premises "without advance written permission of the landlord."

12.  Ex. 3 [2002 Lease Agreement] at 3 ¶ 2 under "Repairs & Alterations"; see Ex. 8 [Deposition of William Tedards (WTedards) vol. II on Apr. 27, 2006] at 36:2-22.

13.  The lease agreement also contains a "no oral modifications" clause, binding the parties to the agreement as the sole and inclusive contract in the absence of a written amended agreement signed by each party.

13.  Ex. 3 [2002 Lease Agreement] at 6 under "Representations, Changes In Lease."

14.  Defendants reviewed, understood, and agreed to the lease terms by signature.

14.  Ex. 3 [2002 Lease Agreement] at 6 under "Representations, Changes In Lease"; see Ex. 4 [Annotated Lease by YTedards]; Ex. 6 [Depo. YTedards] at 18:4-14, 25:10-28:2; Ex. 7 [Depo. WTedards vol. I] at 23:11-24.


**Defendants Breached the Lease By Failing to Pay Rent and Leaving the Premises in Disrepair**

**Undisputed Material Facts**

**Supporting Evidence**

15.  Defendants failed to pay $5,150 in rent during the months of January, February, and May 2004, and $5,400 in rent during the month of June 2004.

15.  Ex. 5 [Ltr. from OFM, to Mr. & Mrs. Tedards, *Notice of failure to pay rent* (June 15, 2004)]; see Ex. 6 [Depo. YTedards] at 29:2-30:15, 32:15-33:12, 81:20-82:10; Ex. 7 [Depo. WTedards vol. I] at 28:7-12; Ex. 8 [Depo. WTedards vol. II] at 33:25-34:6.

16.  Defendants failed to pay late fees of $257.50 during the months of January, February and May, 2004, and a late fee of $270.00 during the month of June 2004.

16.  Ex. 5 [Ltr. from OFM (June 15, 2004)].

-4-

17.  During the month of April 2004, defendants made a partial rent payment of $3,423.33.  Defendants did not pay the remaining amount of $1,984.17 for April 2004; nor did defendants pay the late fee of $99.20 for April 2004.

17. Id.

18.  On or about June 15, 2004, OFM delivered to defendants by certified mail and facsimile a letter containing a notice of default under the lease's terms and giving defendant ten days to pay overdue payments of $24,345.07.

18. Id.

19.  On or about July 21, 2004, no payment having been received, OFM sent defendants a letter indicating that OFM was terminating the lease as of August 23, 2004 and that OFM expected defendants to vacate the Premises on that date.

19.  Ex. 10 [Ltr. from Lynwood M. Dent, Dep. Asst. Sec., OFM, to Mr. & Mrs. Tedards, *Notice of default & termination of lease* (July 21, 2004)].

20.  On or about August 31, 2004, OFM received a letter from defendants notifying OFM for the first time that defendants had vacated the Premises on July 31, 2004.

20.  Ex. 6 [Depo. YTedards] at 31:12-24; see Ex. 7 [Depo. WTedards vol. I] at 88:7-16; Ex. 8 [Depo. WTedards vol. II] at 41:9-15; Ex. 10 [Ltr. from Dent (July 21, 2004)].

21.  By letter dated September 22, 2004, OFM informed defendants that they owed $36,098.12 in back rent and late fees, from January 2004 through August 2004.

21.  Ex. 13 [Ltr. from Richard C. Massey, Prop. Off. Dir., OFM, to Mr. & Mrs. Tedards, *Notice of amounts due* (Sept. 22, 2004)].

22.  By the same letter, OFM notified defendants that OFM conducted a walk-through of the Premises and determined that the Premises was left in a state of disrepair.

22. Id.

24.  The cost of restoration totaled $11,572.84.

24.  Ex. 12 [Aff. Lynne Miller ¶ 3 (July 11, 2006)].

25.  Accordingly, the total amount owed by defendants was $47,670.96.

25.  Ex. 14 [Ltr. Sonfield to Tedards dated *1/12/05*].

26.  Defendants have not to this date paid any portion of the $47,679.96 owed to OFM.  Subtracting the security deposit retained by OFM ($3,915.80 including interest), defendants currently are in arrears for $43,764.16 in rent and fees due to their breach of the Lease.

26.  Id.

Respectfully submitted,

___/s/_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney

__/s/_____
PAUL A. MUSSENDEN,
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4812
Washington, D.C.  20530
(202) 305-4740

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0991 (JGP) |
| **WILLIAM P. TEDARDS, JR. and** | ) | |
| YVONNE TEDARDS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, United States of America, submits the following Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

## BACKGROUND

The United States ceased diplomatic relations with the country of Iran in 1980. Consequently, the Department of State ("DOS") assumed control of properties retained by Iran. One of those properties served as a residence for the Iranian Ambassador and is located at 3410 Garfield Street, N.W., Washington, D.C. (the "Premises"). The DOS's Office of Foreign Missions ("OFM") is charged with maintaining and protecting the Premises on behalf of Iran and in that capacity serves as trustee-landlord of the Premises. See Vienna Convention on Diplomatic Relations ("VCDR"), 23 U.S.T. 3227, 500 U.N.T.S. 95, TIAS 7502, the Foreign Missions Act of 1982 ("FMA"), 22 U.S.C. § 4301 et seq., and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq.

Defendants first entered into a lease agreement for the Premises in 1996 for a three-year lease term.  See Ex. 1 [Lease Agreement 1996-1999 ("1996 Lease")].  Deciding to extend their stay in the Premises, Defendants entered into second lease which ran from May 1, 1999 through April 30, 2002. See Ex. 2 [Lease Agreement 1999-2002 ("1999 Lease")].

On June 18, 2002, Defendants again extended their stay in the Premises by entering into a third lease agreement with OFM, which is the subject of the present lawsuit.  See Ex. 3 [Lease Agreement 2002-2005 ("2002 Lease" or "lease agreement")].  The 2002 Lease provided for another three year term beginning June 1, 2002, and ending May 31, 2005.  Before signing the 2002 Lease, Defendants conducted a line-by-line comparison with the 1999 lease, carefully noting all terms that were modified.  See e.g., Ex. 4 [YTedards' Annotated 2002 Lease]; see also Ex. 6 [YTedards Depo.]at 18:4-14, 25:10-28; and Ex. 7 [Deposition of William Tedards, Jr., vol. I (March 28, 2006)] at 16:24-17:1 & 23:18-24.

<u>RELEVANT LEASE TERMS</u>

Under the 2002 Lease agreement, Defendants were obligated to pay $4,900 per month during the first year beginning in June, 2002.  See Ex. 3 [2002 Lease] at 1("Rent").  Thereafter, Defendants were to pay rent as follows: $5,150 per month from June 1, 2003 through May 31, 2004, and $5,400 per month from June 1, 2004 through May 31, 2005.  Id.  Rent was due on the first day of the month, in addition to a late fee equivalent to 5% of the rent due if received later than the tenth day of the month.  Id.   The lease agreement also specifically admonishes that: "In no event may any amount be subtracted from it [the rent amount]." Id.  Although the amount of rent was increased under the 2002 Lease, the rent due date, late fee provision, and prohibition from subtracting rent under any circumstance, were unchanged from the 1996 and 1999 leases.

<u>See</u> Ex. 2 [1999 Lease] at 1 ("Rent"); and Ex. 1 [1996 Lease] at 1 ("Rent").   When the tenant

fails to pay rent, the lease agreement provides OFM with authority to cancel the lease by a

written ten days notice stating the date of termination.  Ex. 3 [2002 Lease] at 4 ("Tenant's

Defaults & Landlord's Remedies.").

        As tenants under the lease, Defendants were responsible for maintaining the Premises and

returning it and all equipment fixtures in as good a condition as when Defendants took

possession, except for ordinary wear and tear.  <u>See</u> Ex. 3 [2002 Lease] at 2 ("Maintenance,

Responsibilities & Costs.").   In the event tenants failed to maintain and return the Premises in

proper condition, OFM is entitled to restore the Premises to its condition at the time of

possession.  <u>Id.</u>  Tenants are then obligated to pay the cost of any such restoration upon request.

<u>Id.</u>

        In addition to an obligation to pay rent and maintain the Premises, Defendants agreed to

a requirement to report any defect, damage, malfunction or breakage in writing to OFM.  <u>See</u> Ex.

3 [2002 Lease] at 3 ("Repairs & Alterations.").  The lease agreement underscores this

requirement by further stating: "Tenant may not alter, change or add to the Premises without the

advance written permission of Landlord."  <u>Id.</u>   This provision is stated exactly the same way in

each of the lease agreements, and Defendants were even provided written reminders of this

requirement in a letter from OFM.  <u>See generally</u> Ex. 5 [Ltr. fr. Massey to Tedards dated

6/15/04].  Defendants were also made aware that requests for permission under the repair and

alteration terms must be in writing and delivered by hand, certified mail, or facsimile.  <u>See</u> Ex. 3

[(2002 Lease] at 5 ("Notices").

By signing the agreement, Defendants acknowledged they examined the Premises before entering into the lease agreement and found the Premises to be acceptable, meaning the Premises was found to be in good and satisfactory order and repair.  See Ex. 3[2002 Lease] at 6 ("Acceptance of Property.").   This clause is also included in the prior lease agreements.  See Ex. 1[1996 Lease] at 5; and Ex. 2 [1999 Lease] at 5.  Defendants thus inspected and accepted the Premises three times over the span of eight years before entering into three separate lease agreements with OFM.  Defendants further acknowledged that the 2002 Lease represented the sole, complete agreement between the parties, and that any subsequent changes in the lease terms must be in writing, signed, and delivered to each party.  See Ex. 3 [2002 Lease] at 6 ("Representations, Changes in Lease.").

<u>BREACH OF CONTRACT</u>

Starting in January 2004, Defendants stopped paying rent under the lease.  See Ex. 5 (June 15, 2004 Ltr.).  Specifically, Defendants refused to pay $5,150 in rent during the months of January, February, and May of 2004, and $5,400 in rent during the month of June.  See id.; see also Ex. 6 [Yvonne Tedards Deposition (March 27, 2006)]at 29:2-30:15, 32:15-33:12 & 81:20-82:10; Ex. 7 (W. Tedards Depo. vol. I) at 28:7-12; Ex. 8 William Tedards Deposition vol. II (April 27, 2006), at 33:25-34:6.  Defendants did pay full rent for the month of March, 2004. However, Defendants made only a partial payment of $3,423.33, failing to pay the remaining $1,984.17 and the late fee of $99.20.  See Ex. 5 (June 15, 2004 Ltr.); see also Ex. 6 (Y. Tedards Depo.); Ex. 7 (W. Tedards Depo. vol. I); Ex. 8 (W. Tedards Depo. vol. II).  In June, 2004, OFM delivered to Defendants by certified mail and facsimile, a notice of default, giving the Defendants ten days to pay overdue amounts totaling $24,345.07.  See Ex. 5 (June 15, 2004 Ltr.).

-4-

Having received no payment in response to its June, 2004 notice and demand, OFM notified efendants by letter dated July 21, 2004 that the lease would be terminated as of August 23, 2004, and that OFM expected Defendants to vacate the Premises on that date. See generally Ex. 10 [Ltr. fr. Massey to Tedards dated 7/21/04]; see also Ex. 3 [2002 Lease] at 4 ¶ 2 ("Tenant's Defaults & Landlord's Remedies"). In response to this letter, Defendants neither paid the defaulted rent nor complied with the termination. Rather, Defendants abandoned the property in July, 2004, failing to comply with the notice provision under the lease agreement. See generally Ex. 11 [Ltr. fr. Tedards to Massey dated 8/31/04]; see also Ex. 3 [2002 Lease] at 1 ("Lease Term").

In addition, the Premises was left in unsatisfactory condition. See Ex. 12 [Aff. of Lynne Miller] ¶ 3 (July 11, 2006). OFM notified Defendants of this discovery and estimated the amount owed to OFM to cover such damages as provided for in the lease agreement. See Ex. 3 [2002 Lease]; see also Ex. 13 [Ltr. fr. Massey to Tedards dated 9/22/04]; Ex. 6 (Y. Tedards Depo.) at 31:12-24; Ex. 7 (W. Tedards Depo. vol. I) at 88:7-16; and Ex. 8 (W. Tedards Depo. vol. II) at 41:9-15. Defendants refuse to pay the costs of these damages in addition to defaulted rent. The amount owed at this date for back rent and late fees totaled $36,098 from January through August 2004. See Ex. 13 [Ltr. fr. Massey to Tedards dated 9/22/04].

By letter dated January 12, 2005, OFM notified Defendants that the final cost of restoration was $11, 572.84, bringing the total amount due as a result of their breach to $43,764.16. See generally Ex. 14 [Ltr. fr. Sonfield to Tedards dated 1/12/05]. To date, Defendants have refused to pay any portion of the amount due.

## ARGUMENT

**I.     Applicable Legal Standards.**

    A.     <u>Summary Judgment</u>

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321 (1986). The Supreme Court has emphasized that summary judgment is warranted when there is "no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 24 (1986).

The moving party bears the initial responsibility of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Rule 56 does not require the moving party to negate the elements of the nonmoving party's case; to the contrary, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standards for the entry of summary judgment, as set forth in Rule 56 (c) are satisfied. <u>Id</u>. at 323. This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. <u>Id</u>. at 325.

    B.     <u>Federal Common Law</u>

Contracts to which the federal goverment is a party, including leases of real property, are normally governed by federal law. <u>See e.g.</u>, <u>Forman v. United States</u>, 767 F.2d 875, 879-80 (Fed. Cir. 1985) (holding that federal law applies to resolve disputes between the United States and its lessors or tenants); <u>see also</u> <u>Booker v. Edwards</u>, 99 F.3d 1165, 1169 (D.C. Cir. 1996) ("The

disposal and management of federal property is, moreover, an area tranditionally governed by federal law."); Cf. Powers v. United States Postal Serv., 671 F.2d 1041, 1043-46 (7th Cir. 1982) (holding that state substantive law governs in landlord-tenant disputes involving the federal goverment).  However, on matters where federal law is sparse, Courts may incorporate or adopt applicable state law on the issue to determine the content of the federal law.  See e.g., Empire Healthchoice Assurance, Inc., v. McVeigh, 126 S.Ct. 2121, 2132 (2006) ("'[T]he prudent course', we have recognized, is often 'to adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation.'") (quoting United States v. Kimbell Foods, Inc., 440 U.S. 715, 740 (1979)); see also Allenfield Associates v. United States, 40 Fed. Cl. 471, 781 (1998) (applying Pennsylvania landlord-tenant law regarding the expiration of subleases in the absence of federal common law deterinitive of that specific issue).

Identical to the situation here, in United States v. Shofield, OFM sued to recover rent from a tenant in one of its custodial properties owned by Iran.  197 F.R.D. 6, 7 (D.D.C. 2000).  Guided by the above principles, this Court concluded that federal common law governed.  Id. at 9.  Although observing that congressional regulation of foreign missions is silent on leasing, the Court declined to fill the gap with state law, reasoning that in the area of international relations, "the competence and function of the Judiciary and the National Executive in ordering our relationships with other members of the international community must be treated exclusively as an aspect of federal law." Id. (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 425 (1964)).  Moreover, because OFM's suit to recover rent involved real estate connected to international relations, the Court held that federal common law should be informed by  basic contract law, not the landlord/tenant law of the local jurisdiction.  Id.  Indeed, the Court found

that "the property is controlled in many respects by various statutes, treaties, and executive orders, implying strong governmental intent to control its management." Id.

Presented here with circumstances identical to those in Shofield, this Court should apply federal common law, informed by basic contract law, in determining Defendants' liability under OFM's 2002 Lease.

**II.    Analysis.**

A.    OFM Is Entitled to Back Rent for Defendants' Failure to Pay Rent

Under the 2002 Lease, Defendants' obligation to pay rent on the first of the month, and the applicable late fees for failure to do so, is unambiguous. See Ex. 3 [2002 Lease] at 1, ¶1. By letter dated September 22, 2004, OFM informed Defendants that they owed $36,098.12 in back rent and late fees from January 2004 through August 2004. See Ex. 13 [Ltr from Massey to Tedards dated 9/22/04]. Dispositively, Defendants admit their failure to pay rent as detailed in OFM's September, 2004 notice and demand. See Ex. 6 [YTedards Depo.] at 29:2-30:15, 32:15-33:12 & 81:20-82:10; and Ex. 7 (W. Tedards Depo. vol. I) at 27:1 - 28:12; and Ex. 8 [W. Tedards Depo. vol. II] at 33:25-34:6. Hence, under the terms of the 2002 Lease, OFM is entitled to recover back rent, including all applicable late fees.

B.    OFM Is Entitled to Restoration Costs

Except for ordinary wear and tear, the lease agreement required Defendants to maintain the property during their tenancy, and return the Premises and all equipment fixtures in as good a condition as when they took possession. See Ex. 3 [2002 Lease] at 2 ("Maintenance, Responsibilities & Costs."). Without complying with the notice provisions under the lease, Defendants abandoned the property in July, 2004. See Ex. 11 [Ltr. fr. William Tedards to Massey

dated 8/31/04].  After conducting a walk through, OFM determined that the Premises was left in

a state of disrepair, beyond ordinary wear and tear.  See Ex. 12 [Aff. of Lynne Miller] ¶ 3.  The

cost of restoration totaled $11,572.84.  Id.  Defendants are responsible  for the costs OFM

incurred to retore the Premises to its condition at the time of possession.  See Ex. 3 [2002 Lease]

at 2 ¶1 ("Maintenance Responsibilties and Costs.").

Combined with their liability for failure to pay rent, Defendants owe OFM a total of

$43,764.16 for their material breach of the 2002 Lease.  To date, Defendants have refused to pay

any portion of these damages.  Accordingly, the Court should enter judgment forthwith for this

amount.

## CONCLUSION

For the forgoing reasons, the Court should enter summary judgment in favor of the

United States.

Respectfully submitted,

\_\_\_/s/_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

\_\_/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney

\_\_/s/_____
PAUL A. MUSSENDEN,
Assistant United States Attorney
5O1 Third Street, N.W., Rm E-4812
Washington, D.C.  20530
(202) 305-4740