UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No.: |
| | ) | 1:05-CV-00991-JGP |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WILLIAM P. TEDARDS, JR., and | ) | |
| YVONNE TEDARDS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | **Jury Trial Demanded** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants, William and Yvonne Tedards, submit the following memorandum in support of their opposition.

**INTRODUCTION AND SUMMARY**

Essentially, the OFM is seeking damages from two separate sources. <u>First</u>, the OFM claims that the tenants owe rent and fees for a period of several months in 2004, as summarized on page 4 of OFM Exhibit 14. The tenants claim that the OFM is not entitled to a full recovery of these amounts because OFM committed prior material breaches by defaulting on its repair obligations beginning in October of 2002 and

1

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 05-CV-00991-JGP

continuing to the end of the tenancy, thereby damaging the tenants as explained in Opposition Exhibits 1-4 and the detailed Exhibits to the Declarations therein.

To narrow the scope of the dispute on this particular issue, the tenants have agreed to pay the first five items in the list on page 4 of OFM Exhibit 14. See Opposition Exhibit 2 (the April 27, 2006 Declaration of William Tedards). See also OFM Exhibit 8 (Tedards Depo), p. 44, line 12 - p. 45, line 9.) That leaves approximately $22,000 in dispute, i.e., the rent and fees for May through August of 2004. The tenants' position is that the damages they have suffered as a result of the OFM's failure to carry its repair obligations will be equal to at least that amount. (Id.) The tenants will not seek any positive recovery, but will limit their damages to the amount necessary to offset the May through August rent and fees.

Second, the OFM seeks "restoration" damages in the amount of $11,572.84 as set forth in OFM Statement of Fact No. 24 and OFM Exhibits 12 and 14, claiming that the tenants left the premises in a a state of disrepair beyond normal wear and tear. The tenants vigorously dispute that they are responsible for any damage above normal wear and tear and claim that they left their security deposit ($3,500 plus accumulated interest since 1996) with the OFM, which was more than enough to cover any *legitimate* transitional expenses after they departed, as explained in detail in Exhibit 1 to the August 14, 2006 Declaration of William Tedards.

2

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 05-CV-00991-JGP

## RELEVANT LEASE TERMS GOVERNING REPAIR OF THE PREMISES

[For convenience, references to the record in this discussion will be to the Defendants' Statement of Material Facts, identified as "Def.,S.F. ___."]

The building which was under lease here was large and expensive to maintain and was in constant need of repair. In the first six years of the tenancy, the OFM spent approximately $125,000 on its repair obligations. The provisions governing repair obligations were material provisions of the lease. (Def. S.F 1-2.)

The repair provision was discussed extensively over the years and was adjusted at each renewal of the lease. (Def. S.F. 3.) In the first lease period (1996-1999), the OFM was responsible for all "structural" repairs, which were defined in the lease to include, not just the structure, itself, but plumbing, heating, air conditioning, gas and electrical systems, kitchen appliances, and bathroom fixtures. (Def. SF 4.)

In the second lease period (1999-2002), the definition of "structural" remained the same, the OFM remained responsible for all structural repairs, and the tenants agreed to pay the first $100 of any other repairs, a deductible. (Def. SF 5.)

In the third lease period (2002 to the end), the OFM retained responsibility for the structural elements and increased the tenants' deductible for non-structural elements to $200. (Def. SF 6-8.)

3

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 05-CV-00991-JGP

The lease required the tenants to notify the OFM when repairs were needed but did not require the tenants to obtain any form of approval from the OFM before making repairs. (Def. SF 6 and 9.)

### OFM'S BREACH OF THE REPAIR OBLIGATIONS IN THE LEASE

On October 7, 2002, the tenants notified the OFM of the current necessary repairs, most of which were "structural" as the OFM had defined that term in the preceding lease forms. (Def. SF 10.) The OFM did not respond to the notice and did not execute most of the repairs. (Def. SF 11.) On January 8, 2003, the tenants sent OFM a second notice, renoticing the structural repairs that had not been addressed from the October 7 2002 letter and noticing new structural repairs that had arisen since October 7. (Def. SF 12.) The OFM did not respond to this second notice and did not undertake the noticed structural repairs.

On February 5, 2003, the OFM informed the tenants that the funds the OFM normally used for making repairs had been attached and it would be "some time" before final judicial decisions might release the attachment. (Def. SF 14-15.) In response, William Tedards contacted the OFM by telephone and said that the tenants would carry the repair obligations of the OFM temporarily and settle the account later. The OFM did not reject Mr. Tedards' approach. (Def. SF 16-17.)

4

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 05-CV-00991-JGP

On January 9, 2004, the tenants reported $12,000 in expenses they had incurred to carry the OFM's obligations and opened a discussion to gain some reimbursement via crediting against rent payments. On January 14, 2004 the OFM refused, stating that its lawyers would not allow that to occur. (Def SF 18-19.) The building continued to deteriorate during the spring of 2004, making it increasingly difficult to occupy the building and keep it up. (Def. SF 22.)

## THE END OF THE TENANCY

On June 15, 2004, the OFM stated that the concept of crediting the heavy expenses the tenants were incurring to perform the OFM's repair obligations against ongoing rent was "not acceptable." On July 21, 2004, the OFM issued a notice terminating the lease as of August 23, 2004. (Def. SF 20-21.) The tenants vacated the building July 31 2004.

## THE POST-TENANCY EXPENSES

When the tenants departed they left their security deposit ($3,500 with accumulated interest since 1996) to cover transitional expenses for the OFM. This amount was sufficient to cover all legitimate transitional expenses (approximately $4,000.) (Def. SF 24-25.) The OFM went on to spend approximately $7,000 more making repairs which were <u>not</u> attributable to the tenants, most of which the tenants had been asking the OFM to make for years. (Def. SF 23 and 26.)

5

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 05-CV-00991-JGP

## ANALYSIS

Under common law contract principles, the tenants are entitled to total the damages they have suffered as a result of the prior material breaches of the OFM during the period October 7, 2002 through the end of the tenancy in 2004 and to offset those damages against the rent and fees for May 2004 through August 2004. The plaintiff OFM in its breach of contract suit is subject to the affirmative defense of prior material breach as well as the counterclaim. If "unjust enrichment" also applies, as the OFM suggests in its complaint, then the OFM is also subject to that claim as both an affirmative defense and a counterclaim.

The amount in question, approximately $22,000, is easily encompassed within the affirmative defense/counterclaim damages. In just the period February 2003 to January 2004, the tenants incurred over $12,000 in expenses compensating for the failure of the OFM to perform its obligation. (Def. SF 18.) The lengthy list of repairs which the OFM refused to make in the period between April 2002 and February 2003 (Def. SF 10-13) and the repairs the OFM did not make after January 2004, as the building became increasing difficult to occupy and keep up (Def. SF 22) would easily surpass the remaining $10,000 in dispute for May-August, 2004.

With respect to the alleged "restoration" costs, Def. SF 24-26 demonstrate (a) that the security deposit with interest was sufficient to cover the *legitimate*

6

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 05-CV-00991-JGP

transitional costs and (b) the OFM had no basis for attempting to charge the tenants with an extra $7,000 in repairs that could not possibly be attributed to the tenants.

At a minimum, these detailed facts raise genuine issues which require the attention of the trier of fact and preclude summary judgment. The OFM's motions should be denied.

DATED: August 14, 2006                    Respectfully submitted,

                                          WILLIAM P. TEDARDS, JR.
                                          YVONNE TEDARDS

                                          _____/s/_____
                                          William P. Tedards, Jr. (#143636)
                                          6470 N. Silversmith Place
                                          Tucson, AZ 85750
                                          TEL: 202 797-9135

                                          *Appearing Pro Se*

7

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 05-CV-00991-JGP

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2006, a true copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was served by E-mail, on counsel of record as follows:

> Paul A. Mussenden
> U.S. Attorney's Office
> Civil Division
> 555 4th Street, NW
> Washington, D.C. 20530
> TEL: 202 514-7143
> FAX: 202 514-8780
> E-mail: Paul.Mussenden@usdoj.gov

/s/
William P. Tedards, Jr.