August 31, 2004

<u>VIA FAX and U.S. MAIL</u>

Richard C. Massey
Office Director, Property
U.S. Department of State
Office of Foreign Missions
2201 C Street, N.W., Room 2238
Washington, D.C.  20520

    Re:  3410 Garfield Street, N.W.

Dear Richard:

When we received the July 21, 2004 notice to vacate, we had already determined to leave because of accumulating breakdowns and repairs to the property that we had no way to finance.  The building had become almost unlivable (see the list below) for our family of six (which includes four children ages nine, eight, and six-year old twins).  Your June 15, 2004 demand and July 21, 2004 notice to vacate were clear evidence that the State Department, unable to execute its repair obligations because its accounts were frozen, would not cooperate with us to keep us from having to continue to bear the financial burden of all of the necessary repairs.

We vacated the building on July 31, 2004.  This was an extremely difficult process for us, and we are sorry this letter notifying you of the departure date was delayed.  We have just had so much to deal with in connection with the drastic decision to move that it has been hard to keep up.

I am sorry that we were unable to work out a way to continue, but we could not possibly have carried both our normal obligations under the lease plus the cost of all the major repairs and maintenance of a property that was in need of significant repair due to its age and condition.

Richard C. Massey
August 31, 2004
Page 2


These are some of the new repair items that had arisen as of the time we vacated on July 31st:

1. the heating/air conditioning system on the entire second floor (the bedroom floor) did not function in 2004: we were subjected to the extreme Washington, D.C. hot and humid spring and summer temperatures without any air conditioning in our bedrooms;

2. one of the two heating/air conditioning systems on the top floor went out in June 2004;

3. the exhaust fan system in the attic stopped functioning sometime late spring;

4. the clothes dryer in the laundry room stopped working in May 2004;

5. there were continuing major water leaks during every rain at the front and side doors;

6. there were continuing and new water leaks at the windows on the first and second floors;

7. there were continuing and new water leaks from both first floor balconies and the master bedroom balcony;

8. we had a continuing pest control problem caused by poor seals around the exterior of the windows and disintegrating mortar between the bricks;

9. additional window seals became broken (besides the ones previously reported) which caused condensation between the window panes resulting in energy-inefficient windows and astronomical electric utility bills;

Richard C. Massey
August 31, 2004
Page 3

    10.    we had continuing issues with toilets that either ran constantly (flushed by themselves) or had to be flushed manually from inside the tank because of mechanical malfunction;

    11.    the thermostat for the upper oven is no longer properly calibrated; the self-cleaning feature no longer functions and sets off a loud buzz when used and can only be shut off at the fuse box;

    12.    a closet rod collapsed in one of the bedroom closets on the second floor wreaking havoc with my business clothes, etc.

When we vacated, we had the premises totally cleaned and had the carpets shampooed, but were unable to fill in all of the picture-hanging holes. We left all of our keys, with identification of the corresponding doors, in the upper kitchen cabinet at the left side of the kitchen, next to the ovens. Electrical face plates which we removed to replace them with our own are also there, so they can be put back. We have a long-standing security deposit, which has been earning interest for many years, which I am sure will cover way more than the cost of doing that. Anything else that was removed due to its deteriorating condition has been left by the window in the garage.

We have invested heavily in fixtures and improvements to the property, inside and outside, which remain on the premises. These include:

    1.    complete landscaping to (1) replace what was destroyed when the large tree at the Southwest corner of the property fell down during the hurricane and (2) repair the water/mulch run-off problem on the east side of the house near the condenser units;

    2.    a complete tiled floor system on each of the five balconies, which is an absolute necessity, since the surface of the balconies is nothing more than a tar-roofing compound of some type which is unusable (objects cannot be placed on it and people cannot walk on it) and the ongoing

Richard C. Massey
August 31, 2004
Page 4

        problem of standing water on the balconies rendered the balconies unusable without pavers or raised covering of some type;

3. a security alarm system with door enunciation system with three keypads on three different floors (main entrance, garage, and master bedroom), an essential safe-guard system for this building;

4. an investment of ½ of the kitchen remodeling;

5. an investment to reinforce ceilings to hold light fixtures (living room, entry hall, and stairwells);

6. a wall mirror in the powder room on the first floor;

7. a wall mirror in the nanny's bedroom in the lower level;

8. made-to-measure mini blinds in every window;

9. recently painted lower level;

10. recently painted den;

11. recently painted kitchen;

12. rheostats, 3-way dimmers, and switch and receptacle covers on all floors;

13. installation of a 110V line on the top floor;

14. connected telephone line system;

15. telephone intercom/door-ringing system (front side door, kitchen, lower level, second floor, top floor), because the front door bell never worked and a knock at the front door could not be heard throughout the house).

Richard C. Massey
August 31, 2004
Page 5


Having managed to vacate our long-standing residence, we would like to negotiate a fair resolution of the account, considering all of these factors. We have been financially burdened by the move and would like to resolve this matter in a reasonable manner. If we do not hear from you first, we will contact you again with a proposal.

We regret that, after over eight years of being reliable tenants devoted to this property, we were unable to continue under these difficult circumstances. A key to the front door was sent to you under separate cover via First Class Mail and you should have received it by now.

                              Sincerely,


                              William P. Tedards, Jr.

WPT/8231
Attachment