UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>WILLIAM P. TEDARDS, JR. AND )<br>YVONNE TEDARDS )<br>)<br>Defendants. )<br>_____ ) | Civil No. 05-00991 (JGP) |

MEMORANDUM OPINION

This is before the Court on **Plaintiff's Motion for Summary Judgment [#25]** ("Pl.'s Mot."), which "moves for summary judgment" "because there is no genuine issue as to any material fact regarding [its] claim for breach of contract, back rent, and restoration costs." Pl.'s Mot., at 1.[1] In response, defendants ("the Tedards") argue that they have "raise[d] genuine issues which require the attention of the trier of fact and preclude summary judgment[,]" and, accordingly, OFM's dispositive Motion "should be denied." Memorandum of Points and Authorities in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment [#26] ("Def.'s Memo"), at 7.[2]

---

[1] When referring to plaintiff, the Office of Foreign Ministries of the United States Department of State, the Court will use the abbreviation "OFM." The Court will use the abbreviation "Pl.'s Memo" when citing the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

[2] The Court notes at the outset that the Tedards proceed *pro se*. However, William Tedards appears to be an attorney in Arizona because Defendants' Motion for Leave to File Defendants' Opposition to Plaintiff's Motion for Summary Judgment One Day Later, which was granted by the Court, is signed:

William P. Tedards, Jr. (#143636)
6470 N. Silversmith Place

Upon consideration of the Motion, the Opposition, and the entire record, the Court has concluded that OFM's Motion will be denied for the reasons set forth below.

## BACKGROUND

OFM brings this action alleging that the Tedards, former tenants of property located at 3410 Garfield Street in Northwest Washington, D.C. ("the Garfield property"), breached a lease agreement by failing to pay rent[3], and violated the Foreign Missions Act of 1982, 22 U.S.C. § 4301 et sec. ("FMA") by unlawfully using the benefits of the Garfield property. Complaint [#1], at ¶¶ 1-2.  The Tedards bring a counterclaim alleging that OFM breached the lease by failing to make reasonable repairs to the Garfield property which were required under the lease. Counterclaim [#6], at ¶¶ 1-31.

The lease began on or about June 18, 2002 and extended through May 31, 2005. Lease Agreement, at 1; *accord* Complaint, at ¶ 20; *but see* Answer [#2], at ¶ 20 ("Defendants . . . aver that the lease relationship . . . began in April of 1996, when the security deposit of $3,500.00 was

---

Tucson, AZ 85750
TEL: 202 797-9135

[3] The lease was signed on June 18, 2002. Lease Agreement, at 7.  The lease sets forth the following regarding failure to pay rent and late fees:

> If Tenant fails to correct a default [such as not paying rent] within [thirty days,] Landlord may cancel this lease by giving tenant a written ten (10) day notice stating the date the term will end. . . . . Tenant shall continue to be responsible for rent accrued prior to such termination as well as for all other obligations that accrued under this lease prior to such termination in respect of time periods prior thereof.

*Id.* at 4.

made, and ran continuously until July 31, 2004, when the defendants vacated the premises.").[4]

OFM is the landlord-trustee for the Garfield property. Complaint, at ¶ 4; *see* Answer, at ¶ 4. OFM took the Garfield property into custody "following the severance of diplomatic ties with Iran in 1980." Complaint, at ¶ 2.

Pursuant to its terms, the Tedards were required to pay $4,900 monthly during the first year of the lease, with the rent to increase during the successive lease years. *Id.* at ¶ 2; *accord* Lease Agreement, at 1 ("[T]he Tenant is to pay the sum of $4,900 per month during the first year beginning with the commencement of this Lease."). The parties are in agreement that the Tedards stopped paying rent in January 2004, and did not pay a "late fee equivalent to 5% of the rent payable for such month." Complaint, at ¶ 22; *see* Answer, at ¶ 20 ("Defendants admit the averments of Paragraph 22.").[5]

---

[4] The apparent discrepancy between the parties and their competing interpretations of when the "lease relationship" began is explained below:

> Defendants first entered into a lease agreement for the Premises in 1996 for a three-year lease term. See Ex. 1 [Lease Agreement 1996-1999 ("1996 Lease")]. Deciding to extend their stay in the Premises, Defendants entered into second lease which ran from May 1, 1999 through April 30, 2002. See Ex. 2 [Lease Agreement 1999-2002 ("1999 Lease")].
>
> On June 18, 2002, Defendants again extended their stay in the Premises by entering into a third lease agreement with OFM, *which is the subject of the present lawsuit*. See Ex. 3 [Lease Agreement 2002-2005 ("2002 Lease" or "lease agreement")].

Pl.'s Memo, at 2 (emphasis added). For the purpose of resolving the instant action, the only lease which is relevant is the one that began in 2002.

[5] The parties also agree that the Tedards paid the required rent for March 2004, and paid some portion of the required rent for April 2004. Complaint, at ¶ 24; Answer, at ¶ 24 (admitted).

Beginning in October 2002, the Tedards sent OFM a number of letters identifying what they believed to be "necessary repairs" for OFM to make to the Garfield property. *See* Defendants' Statement of Material Facts, Some of Which Are Undisputed and Some of Which Present a Genuine Issue to Be Determined by the Trier of Fact ("Def.'s Fact Statement"), at 5-6 Regarding these letters, the Tedards specifically state:

> [] On October 7, 2002, the tenants notified the OFM of the current necessary repairs, pursuant to the repair provision.
>
> The OFM did not respond to the October 7, 2002, notice and did not undertake most of the noticed structural repairs.
>
> On January 8, 2003, the tenants sent the OFM a second notice, renoticing the structural repairs that had not been addressed and listed new structural repairs that had arisen since the October 7, 2002 letter.
>
> The OFM did not respond to this second notice and did not undertake the noticed structural repairs.

*Id.* When OFM eventually responded, it indicated that it was unable to satisfy the Tedards' repair requests because it lacked "access to [ ] funds" "from which maintenance and repair expenses [would] have been paid." February 5, 2003 Letter from Lynwood M. Dent., Jr., Deputy Assistant Secretary of the Office of Foreign Missions, to William P. Tedards, Jr. and Yvonne Tedards.

On January 9, 2004, the Tedards sent OFM another letter stating that they had expended more than $12,000 of their own money in making repairs to the Garfield property. Def.'s Fact Statement, at 7. In an apparent response, OFM sent the Tedards a letter dated June 15, 2004 in which it stated that the Tedards were in default under the lease for failure to pay rent beginning in January 2004. *Id.* This letter, which OFM delivered to the Tedards by certified mail and fax, was

a notice of the rent in default that gave the Tedards ten days to pay the then alleged outstanding balance of $24,345.07. Complaint, at ¶ 25; Answer, at ¶ 25 (admitted). Having not received payment from the Tedards, OFM subsequently mailed them a letter on July 21, 2004 which indicated that their lease would be terminated on August 23, 2004, the date that the Tedards would be required to vacate the Garfield property. Complaint, at ¶ 26; Answer, at ¶ 26 (admitted). The Tedards vacated the Garfield property on July 31, 2004. Answer, at ¶ 27.

OFM contends that the Tedards have breached the lease because they failed to pay $36,098.12 in back rent and late fees, spanning the period of January 2004 through August 2004, and because upon inspection, OFM purportedly discovered that the Tedards left the Garfield property "in a state of disrepair." Complaint, at ¶ 28. OFM calculated that the damage would cost $11,572.84 to repair – an amount which it added to the principal balance allegedly owed by the Tedards in back rent and late fees to arrive at an outstanding balance of $47,670.96. *Id.* at ¶ 29. OFM reached the final outstanding balance of $43,764.16, which it seeks to recover by bringing this action, by subtracting the $3,915.80 security deposit ($3,500 plus $415,80 in accrued interest) from that figure. Complaint, at ¶ 30.

**LEGAL STANDARD**

To prevail on a summary judgment motion, which is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure, the moving party must demonstrate on the pleadings, depositions, answers to interrogatories, admissions, and affidavits that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2509-10 (1986). A court should draw

all reasonable inferences in favor of the nonmoving party when reviewing such a motion. *Washington Post Co. v. United States Dep't of Health and Human Servs.*, 275 U.S. App. D.C. 101, 865 F.2d 320, 325 (D.C. Cir. 1989). Notwithstanding, a court must not accept unsupported allegations or denials, speculative statements or legal conclusions couched as facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

## ANALYSIS[6]

OFM asserts that the Tedards breached the lease by failing to pay rent, and by making various repairs and changes to the Garfield property that violated the lease terms. *See* Pl.'s Mot., at 1. The Tedards counter that OFM "is not entitled to a *full* recovery . . . because [it] committed prior material breaches by defaulting on its repair obligations beginning in October of 2002 and continuing to the end of the tenancy, thereby damaging [them] . . . ." Def.'s Memo, at 1 (emphasis added).

### I.     Amount the Tedards Concede They Owe

"To narrow the scope of the dispute on this particular issue," the Tedards state that they will pay all but the following in rent and associated fees:

> [T]he tenants have agreed to pay the first five items in the list on page 4 of OFM Exhibit 14. See Opposition Exhibit 2 (the April 27, 2006 Declaration of William Tedards). See also OFM Exhibit 8 (Tedards Depo), p. 44, line 12 - p. 45, line 9.) *That leaves approximately $22,000 in dispute, i.e., the rent and fees for May through August of*

---

[6] The Court need not reach the issue of whether the parties unjustly enriched themselves under the FMA or the lease because, as explained *infra*, there are material issues in dispute regarding whether there was a breach of the lease through (1) failure to make reasonable repairs, (2) failure to pay the required rent and associated fees, and (3) the making of various alterations to the Garfield property without permission.

> *2004*. The tenants' position is that the damages they have suffered as a result of the OFM's failure to carry its repair obligations will be equal to at least that amount. (Id.) The tenants will not seek any positive recovery, but will limit their damages to the amount necessary to offset the May through August rent and fees.

Def.'s Memo, at 4 (emphasis added). That is, the Tedards admit that OFM is due *some* recovery in this case. However, they claim that they do not owe the full amount alleged by OFM because they "will claim the offset based on the cumulative value of the [] items" specifically set forth below:

   a. the ongoing unrepaired items listed in our October 7, 2002 letter (EXHIBIT 2);

   b. the additional unrepaired items listed in our January 8, 2003 letter (EXHIBIT 3);

   c. the amounts we expended for repairs the State Department should have made during the period February 6, 2003 through January 8, 2003 [sic], as summarized in our letter of January 9, 2004 (EXHIBIT 4) followed by a more detailed letter on January 14, 2004 (EXHIBIT 5);

   d. the amounts by which the State Department was unjustly enriched as the result of our repairs and necessary replacements, as summarized in our letter of November 30, 2004 (EXHIBIT 6) (without attachments);

   e. the further breakdowns that occurred in the spring of 2004, as described in Paragraphs 14 through 16 of the Counterclaim and summarized in our letter of August 31, 2004 (EXHIBIT 7); and

   f. any amounts remaining from our security deposit, after all legitimate transition costs are accounted for (see Paragraph 4, *infra*.)

Declaration of William P. Tedards, Jr. ("W. Tedards Decl."), at 2-3.

Without reaching a position on the merits of the Tedards' argument here, because they estimate that $22,000 still remains in dispute, and OFM claims that $36,098.12 in back rent and

late fees is owed, the Court understands the Tedards to concede that they owe $14,098.12 in back rent and late fees.

**II.    OFM's Repair Obligations vs. the Tedards' Back Rent and Late Fee Obligations**

There appears to be no dispute in this case that the Garfield property, when vacated by the Tedards, was in a state of despair. Complaint, at ¶ 28; *see* Answer, at ¶ 28.  However, the Tedards insist that they left the Garfield property "in better condition" when they vacated on July 31, 2004 "than when delivered by the plaintiff in 1996[.]" Answer, at ¶ 28 (emphasis added). According to the Tedards, among many other things, they repaired a malfunctioned dishwasher motor, an "exploded" glass cook top, a disengaged garage door coil, and a broken water line that flooded their kitchen during a severe storm. "Repair/replacement Costs Incurred by Tedards," January 14, 2004.  The total cost of these repairs and others allegedly exceeded $12,000. Def.'s Fact Statement, at 7.

With respect to OFM's repair obligations under the lease, the Tedards have raised genuine issues of material fact. *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2509-10.  First, there is a material question of whether they acted reasonably by purportedly paying for repairs which should have instead been undertaken by OFM pursuant to the lease.  And second, assuming that it was reasonable for the Tedards to finance the repairs, there is a material question of what the repairs should have cost – an amount which OFM would ultimately be responsible for were the Tedards to prevail.

Moreover, the record in this case reveals that the Tedards paid rent from June 2002 to January 2004. *See* Complaint, at ¶ 22 ("*Starting* in January 2004, defendants *stopped* paying rent

8

under the lease.") (emphasis added)); Answer, at ¶ 22 (admitted). Thereafter, they paid *full rent* once between January 2004 and August 2004, and *partial rent* once during that same time period. Complaint, at ¶ 24 ("During the month of March 2004, defendants paid their full rent. During the month of April 2004, defendants made a partial rent payment . . . ."); Answer, at ¶ 24 ("Defendants admit the averments of Paragraph 24."). On these facts, assuming *arguendo* that the Tedards stopped paying rent in January 2004 in protest of OFM's "failure to carry [out] its repair obligations" beginning in October 2002, Def.'s Memo, at 4, the Court questions why they would reverse themselves by paying the required rent for March 2004, and also paying a portion of the required rent for April 2004. In other words, from this conduct, it is unclear whether the precipitating event justifying the Tedards' nonpayment of back rent and late fees from January 2004 to August 2004 was OFM's failure to make the requested repairs. However, as a matter of law, this is a material issue to be decided at trial. *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2509-10.

**III.     Restoration Damages**

Last, setting aside the repairs to the dishwasher motor and the garage door coil, *see* Def.'s Fact Statement, at 7, the Tedards *also* state, *inter alia*, that they made the following alterations to the Garfield property:

> []      a complete tiled floor system on each of the five balconies, which is an absolute necessity, since the surface of the balconies is nothing more than a tar-roofing compound of some type which is unusable (objects cannot be placed on it and people cannot walk on it) and the ongoing problem of standing water on the balconies rendered the balconies unusable without pavers or raised covering of some type;
>                                                         . . . .

9

>       []      an investment of ½ of the kitchen remodeling;
>
>       []      and investment to reinforce ceilings to hold light fixtures (living room, entry hall, and stairwells);
>
>       []      a wall mirror in the powder room on the first floor; [and]
>
>       []      a wall mirror in the nanny's bedroom in the lower level . . . .

August 31, 2004 Letter from Defendant William P. Tedards, Jr. To Richard C. Massey, Office Director, U.S. Department of State ("August 31 Ltr."), at 4.

Although the Tedards do not seek recovery for these alterations and others, in their view, the alterations which they made to the Garfield property do not constitute a material breach of the lease because the lease "did not require the tenants to obtain any form of approval from the OFM before making repairs." Def.'s Memo, at 4.

While the Tedards are certainly correct that the lease did not require prior approval before making "repairs and alterations," the *only* permissible changes under the lease included "keep[ing] in a state of good repair, maintenance, and cleanliness, all parts of the Premises." Lease Agreement, at 2. And to preclude any confusion with regard to what *specific* "repairs and alterations" that the Tedards were allowed to make without first seeking permission from OFM, the lease states the following in pertinent part below:

> Nothing contained herein or otherwise is intended to nor shall cause Tenant to be responsible for repairing or maintaining *the structural elements* or roof of the Premises, all of which the Landlord hereby agrees to maintain and repair.
>                               . . . .
>
> *Tenant may not alter, change or add to the Premises without the advance permission of Landlord.*

*Id.* at 2-3 (emphasis added).

The Tedards made numerous structural alterations, changes and additions to the Garfield property without seeking prior approval from OFM. *See* August 31 Ltr., at 4; *see also* Def.'s Memo, at 4. These extensive alterations, which include re-tiling five balconies, kitchen remodeling, and reinforcement of the living room, entry hall and stairwell ceilings for the purpose holding light fixtures, may exceed the modest "repairs and alterations" that they were authorized to make on their own pursuant to the lease terms. *See* Lease Agreement, at 2-3. Moreover, it may be shown that these changes stand in stark contrast to the "necessary repairs" that the Tedards alleged in their January 9, 2004 letter. *See* Def.'s Fact Statement, at 7.

At bottom, OFM claims that the Tedards' actions in this regard have cost them $11,572.84 in restoration costs, and the Tedards are responsible for compensating OFM for this entire amount. Complaint, at ¶¶ 28-29. On these facts, and pursuant to the lease terms, the Court concludes that there is an issue of material fact in dispute regarding whether the Tedards owe OFM for restoration costs. Also, there is a material issue in dispute regarding the *exact amount* of the restoration costs owed by the Tedards.

## CONCLUSION

For the foregoing reasons, the Court has concluded that Plaintiff's Motion for Summary Judgment [#25] is **DENIED**. An Order consistent with this Memorandum Opinion was issued by the Court on March 30, 2007.

**Date: April 24, 2007**                                                                                                                **JOHN GARRETT PENN**
                                                                                                                                                        **United States District Judge**