UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-0991 (DAR) |
| ) | ECF |
| WILLIAM P. TEDARDS, JR. ) | |
| YVONNE TEDARDS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFF'S PRETRIAL STATEMENT**

**1.** **Parties and Counsel**:

**Plaintiff**:   United States of America

Paul A. Mussenden
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 305-4740

Megan M. Weis
Special Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 514-5134

Counsel for Plaintiff

**Defendants**:   William Price Tedards, Jr., pro se
Yvonne Tedards, pro se

William Price Tedards, Jr.
Yvonne Tedards

6470 N. Silversmith Place
Tuscon, AZ 85750
(202) 797-9135

      1101 30th Street, NW
      Suite 500
      Washington, DC 20007
      (202) 797-9135

**2.**     **Plaintiff's Statement of the Case:**

    Under the terms of the Foreign Missions Act of 1982, the State Department's Office of Foreign Missions ("OFM" or "Plaintiff") serves as landlord of the property owned by the state of Iran and located at 3410 Garfield Street, N.W., Washington, D.C. 20007 ("Premises"). On or about June 18, 2002, OFM entered into a third lease agreement with Defendants for their use and occupancy of the premises as a single-family residence. The lease provided for a three year term beginning June 1, 2002 and extending through May 31, 2005. Before signing the 2002 Lease, Defendants conducted a line-by-line comparison with a prior lease for the same Premises, carefully noting all terms that were modified. The 2002 lease agreement also contained a "no oral modifications" clause, binding the parties to the agreement as the sole and inclusive contract in the absence of a written amended agreement signed by each party.

    Under the terms of the lease agreement, Defendants were to pay $4,900 per month during the first year beginning with commencement of the lease. Thereafter, Defendants were to pay $5,150 per month from June 1, 2003 through May 31, 2004 and $5,400 per months from June 1, 2004 through May 31, 2005. The rent payment was due on the first day of the month. Rent received later than the tenth day of the month was to be accompanied by a late fee equivalent to 5% of the rent payable for such month. Further, the lease agreement specifically admonished that: "In no event may any amount be subtracted from it [the rent amount]." Except for ordinary wear and tear, the lease agreement required Defendants to maintain the property, return the premises and all equipment fixtures in as good condition as when Defendants took possession.

In the event tenants failed to meet this requirement, OFM was entitled to restore the premises, equipment and fixtures to their condition at the time of possession.  Defendants were to pay the cost of any such restoration upon request.

In addition, Defendants were required to report any defect, damage, malfunction or breakage in writing to OFM.  Tenants were expressly barred from making any alterations, changes, or additions to the premises "without advance written permission of the landlord."

Defendants failed to pay $5,150 in rent during the months of January, February, and May 2004, and $5,400 in rent during the month of June 2004.  Defendants failed to pay late fees of $257.50 during the months of January, February and May, 2004, and a late fee of $270.00 during the month of June 2004.  During the month of April 2004, Defendants only made a partial rent payment of $3,423.33 and did not pay the late fee of $99.20.

On or about August 31, 2004, OFM received a letter from Defendants notifying OFM for the first time that Defendants had vacated the Premises on July 31, 2004.  By letter dated September 22, 2004, OFM informed Defendants that they owed $36,098.12 in back rent and late fees, from January 2004 through August 2004 and that OFM conducted a walkthrough of the Premises and determined that the Premises was left in a state of disrepair.
The cost of restoration totaled $11,572.84.  Accordingly, the total amount owed by Defendants was $43,764.16, including $36,098.12 in back rent and late fees (subtracting the security deposit retained by OFM) and $11,572.84 in restoration costs.  To date, Defendants have not to this date paid any portion of the amount owed due to their breach of the Lease.

3.      **Plaintiff's Statement of Claims:**

Plaintiff alleges that Defendant's breached the 2002 Lease Agreement in the amount of $43,764.16.  This amount includes $36,098.12 in back rent and late fees and $11,572.84 in

restoration costs. Specifically, Plaintiff alleges that Defendant failed to fully pay rent and late fees in January, February, April, May, and June 2004. Defendants breached the lease provisions that stated that, "in no event may any amount be subtracted from it [the rent amount]." Plaintiff also alleges that Defendants breached the lease provision requiring Defendants, except for ordinary wear and tear, to return the premises and all equipment fixtures in as good condition as when Defendants took possession. Plaintiff alleges that this breach costs Plaintiff $11,572.84 in restoration costs.

**4.   Plaintiff's Statement of Defenses to Defendants' Counterclaim:**

By its terms, the 2002 lease agreement prohibited Defendants' unilateral reduction of, or failure to pay rent: "in no event may any amount be subtracted from it [the rent amount]." 2002 Lease Agreement at 1 ¶ 2 under "Rent." Defendants' claim for offset is based on amounts allegedly expended to make repairs or improvements to the Premises. The lease agreement precluded any such repairs without "advance permission of Landlord." Id. at 2-3. Because Defendants did not obtain such advance permission from Plaintiff, the lease agreement precludes recovery of any such expenditures.

**5.   Undisputed Issues/Stipulations:**

The following facts have found to be established by the Court and are otherwise undisputed:

1. Under the terms of the Foreign Missions Act of 1982 ("FMA"), the State Department's Office of Foreign Missions ("OFM") serves as landlord of the property owned by the state of Iran and located at 3410 Garfield Street, N.W., Washington, D.C. 20007. See 2002 Lease Agreement at 6 under "Authority"; Answer, at ¶ 4; see also, Foreign Missions Act ("FMA"), 22

U.S.C. § 4301 et. seq., the Vienna Convention on Diplomatic Relations ("VCDR"), 23 U.S.T. 3227, and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et. seq.

2. On or about June 18, 2002, OFM entered into a written lease with Defendants for their use and occupancy of the premises as a single-family residence. The lease was for a three year term, beginning June 1, 2002 and extending through May 31, 2005.  2002 Lease Agreement; Deposition of Yvonne Tedards (YTedards) on Mar. 27, 2006 at 16:15-22, 18:4-19; Deposition of William Tedards (WTedards) vol. I on Mar. 28, 2002 at 22:23-23:21.

3. Under the terms of the lease agreement, Defendants were to pay $4,900 per month during the first year beginning with commencement of the lease. Thereafter, Defendants were to pay rent as follows: $5,150 per month from June 1, 2003 through May 31, 2004, and $5,400 per months from June 1, 2004 through May 31, 2005.  2002 Lease Agreement at 1 ¶ 1 under "Rent"; Depo. of YTedards at 19:5-18; Depo. of WTedards vol. I at 23:25-24:7.

4. The rent payment was due on the first day of the month. Rent received later than the tenth day of the month was to be accompanied by a late fee equivalent to 5% of the rent payable for such month. The lease agreement states, "in no event may any amount be subtracted from it [the rent amount]."  2002 Lease Agreement at 1 ¶ 2 under "Rent"; Depo. of YTedards at 19-25; Depo. of WTedards vol. I at 24:8-14.

5. Defendants paid a security deposit of $3,500.  2002 Lease Agreement at 2 ¶ 1 under "Security".

6.  Under the terms of the lease agreement, at least sixty days written notice of intent to vacate must be given to the landlord for refund of the deposit.  Id. at ¶ 2.

7. The lease agreement also provides that in the event the tenant does not fully comply with the terms of the lease, the landlord may, following the expiration of the applicable grace and cure periods after notice, use the security deposit to pay amounts owed by the tenant pursuant to the lease.  Id.

8. Except for ordinary wear and tear, the lease agreement required defendants to maintain the property, return the premises and all equipment fixtures in as good condition as when defendants took possession.  2002 Lease Agreement at 2 ¶ 1 under ("Maintenance Responsibilities & Costs.").

9. In the event tenants failed to meet this requirement, OFM was entitled to restore the premises, equipment and fixtures to their condition at the time of possession. Defendants were to pay the cost of any such restoration upon request.  Id.

10. Defendants were required to report any defect, damage, malfunction or breakage in writing to OFM.  2002 Lease Agreement at 3 ¶ 1 under "Repairs & Alterations"; Depo. YTedards at 20:22-25.

11. At the tenant's expense, not to exceed $200 per repair, Defendants were required to keep all parts of the premises, including appliances and equipment therein, in a state of good

6

repair and cleanliness. In the event tenant failed to maintain the premises as required, the lease provides for the landlord, following applicable grace and cure periods after notice, to make such repairs and charge the tenant the reasonable cost of the same.  2002 Lease Agreement at 3 ¶ 1 under "Repairs & Alterations"; Depo. WTedards vol. 1 at 56:19-57:3; Memorandum Opinion at 10.

12. Tenants were expressly barred from making any alterations, changes, or additions to the premises "without advance written permission of the landlord."  Memorandum Opinion at 10; 2002 Lease Agreement at 3 ¶ 2 under "Repairs & Alterations"; Deposition of William Tedards (WTedards) vol. II on Apr. 27, 2006 at 36:2-22.

13. Defendants' made numerous structural alterations, changes and additions to the Premises without seeking prior approval from OFM. Memorandum Opinion at 11; Letter from William P. Tedards, Jr., to Richard C. Massey, Office Director, dated August 31, 2004 at 4; Defendants' Opposition at 4.

14. The lease agreement also contains a "no oral modifications" clause, binding the parties to the agreement as the sole and inclusive contract in the absence of a written amended agreement signed by each party.  2002 Lease Agreement at 6 under "Representations, Changes In Lease."

15. Defendants reviewed, understood, and agreed to the lease terms by signature.  2002 Lease Agreement at 6 under "Representations, Changes In Lease"; Annotated Lease by YTedards; Depo. of YTedards at 18:4-14, 25:10-28:2; Depo. of WTedards vol. I at 23:11-24.

16. Defendants failed to pay $5,150 in rent during the months of January, February, and May 2004, and $5,400 in rent during the month of June 2004.  Answer, at ¶ 20; Ltr. from OFM, to Mr. & Mrs. Tedards, *Notice of failure to pay rent* (June 15, 2004); Depo. YTedards at 29:2-30:15, 32:15-33:12, 81:20-82:10; Depo. WTedards vol. I at 28:7-12; Depo. WTedards vol. II at 33:25-34:6.

17. Defendants failed to pay late fees of $257.50 during the months of January, February and May, 2004, and a late fee of $270.00 during the month of June 2004.  Answer, at ¶ 20; Ltr. from OFM (June 15, 2004).

18. During the month of April 2004, Defendants made a partial rent payment of $3,423.33. Defendants did not pay the remaining amount of $1,984.17 for April 2004; nor did defendants pay the late fee of $99.20 for April 2004.  Answer, at ¶ 24; Ltr. from OFM (June 15, 2004).

19. On or about June 15, 2004, OFM delivered to Defendants by certified mail and facsimile a letter containing a notice of default under the lease's terms and giving defendant ten days to pay overdue payments of $24,345.07.  Complaint, at ¶ 25; Answer, at ¶ 25.

20. On or about July 21, 2004, no payment having been received, OFM sent defendants a letter indicating that OFM was terminating the lease as of August 23, 2004 and that OFM expected Defendants to vacate the Premises on that date. Complaint, at ¶ 26; Answer, at ¶ 26.

21. On or about August 31, 2004, OFM received a letter from Defendants notifying OFM for the first time that Defendants had vacated the Premises on July 31, 2004.  Answer, at ¶ 27; Depo. YTedards] at 31:12-24; Depo. WTedards vol. I at 88:7-16; Depo. WTedards vol. II at 41:9-15; Ex. 10 [Ltr. from Dent (July 21, 2004).

22. By letter dated September 22, 2004, OFM informed defendants that they owed $36,098.12 in back rent and late fees, from January 2004 through August 2004.  Ltr. from Richard C. Massey, Prop. Off. Dir., OFM, to Mr. & Mrs. Tedards, *Notice of amounts due* (Sept. 22, 2004).

23. By the same letter, OFM notified Defendants that OFM conducted a walkthrough of the Premises and determined that the Premises was left in a state of disrepair. Id; Memorandum Opinion at 8.

24. The cost of restoration totaled $11,572.84. Aff. Lynne Miller ¶ 3 (July 11, 2006).

25. Defendants have not to this date paid any portion of the $47,679.96 owed to OFM. Subtracting the security deposit retained by OFM ($3,915.80 including interest), Defendants currently are in arrears for $43,764.16 in rent and fees due to their breach of the Lease.  Id.

26. Defendants' breached the lease agreement by failure to pay rent.  Plaintiff is due at minimum, "some recovery in this case" and restoration costs.  See Memorandum Opinion at 7.

27. At a minimum, Defendants owe, $14,098.12 in back rent and late fees.  Memorandum Opinion at 8.

**6.     Plaintiff's Witness Schedule:**

1. Miranda Longstreth
3850 39th Street NW
Apt. F102
Washington, DC 20016

Ms. Longstreth conducted the final walk through of the Premises after Defendants' vacated the property, took pictures of the damage, and posted repairs/income to the OFM computers on properties managed by OFM.  Ms. Longstreth will testify to, to the best of her memory, the condition of the Premises during her walkthrough.   2.5 hours of testimony.

2. Lynne Miller
3130 Willington Road
Alexandria, VA 22302

Ms. Miller served at the Supervisory Program Officer in OFM Mr. Miller entered the Premises and determined what repairs were necessary to restore the Premises to a rentable condition.  Ms. Miller will testify, to the best of her memory, that the Premises was left in a state of disrepair beyond normal wear and tear.  Ms. Miller calculated the restoration costs to be $11, 572.84.  1.5 hours of testimony.

**7.     Exhibit Lists:**

   A.   **Plaintiff's Exhibits**

        1. Lease Agreement, dated March 4, 1996

        2. Letter from William P. Tedards, Jr., to Richard Massey, dated April 9, 1999

.    3. Lease Agreement, dated June 18, 2002

4. Yvonne Tedard's Mark-up of 2002 Lease Agreement

5. Letter from Richard C. Massey, Office Director to William P. Tedards, Jr., dated June 15, 2004

6. Letter from Lynwood M. Dent, Deputy Assistant Secretary to Mr. & Mrs. William Tedards, dated February 5, 2003

7. Letter from Lynwood M. Dent, Deputy Assistant Secretary to William and Yvonne Tedards, dated July 21, 2004

8. Letter from Richard C. Massey, Office Director to William and Yvonne Tedards, dated September 22, 2004

9. Declaration of William P. Tedards, Jr., dated August 15, 2006

10. Letter from Lynwood M. Dent, Jr., Deputy Assistant Secretary to Mr. and Mrs. William Tedards, dated February 5, 2003

11. Photographs of 3410 Garfield Street taken on September 9, 2004

**8.   Plaintiff's Designation of Depositions, or portions thereof, to be offered in evidence by the party:**

1. Deposition of Yvonne Tedards, dated March 27, 2006

2. Deposition of William P. Tedards, Jr., vol. I, dated March 28, 2006

3. Deposition of William P. Tedards, Jr., vol. II on Apr. 27, 2006

**9.   Relief Sought by Plaintiff**

Plaintiff seeks a total of $43,764.16, in monetary damages for Defendants' breach of lease, failure to pay back rent and late fees, and for restoration costs. Plaintiff seeks $36,098.12 for failure to pay back rent and late fees. Plaintiff seeks $11,572.84 in restoration costs for Defendants' failure to return the Premises and all equipment fixtures in as good condition as when Defendants took possession.

**10.   Motion to be Filed by Plaintiff**

Consent Motion to Strike Demand for Jury Trial and Plaintiff's Unopposed Motion to Bifurcate Defendants' Counterclaim and Hear Evidence of that Claim First.

Respectfully submitted,

\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

\_\_/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney

\_\_/s/_____
Paul A. Mussenden
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 305-4740

\_\_/s/_____
Megan M. Weis
Special Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 514-5134

*Counsel for Plaintiff*