UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Civil Action No.: |
| ) | 1:05-CV-00991-DAR |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| WILLIAM P. TEDARDS, JR., and ) | |
| YVONNE TEDARDS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANTS PRETRIAL STATEMENT**

1. **Statement of the Case**

This is a landlord-tenant dispute. The parties to the action are as stated in Paragraph 1 of the Plaintiff's pretrial statement. The basis of the Court's jurisdiction is stated in Paragraph 5 of the Complaint.

**The Course of Proceedings to Date**

The Office of Foreign Missions (OFM) filed its complaint on May 17, 2005. On March 30, 2007, the Court denied the OFM's motion for summary judgment. On July 9, 2007, the Court ordered the case to mediation. On July 26, 2007, the parties reached a mediated Agreement in Principle, but the parties have been unable to complete the final settlement.

**2.     Statement of the Opposing Claims and the Defenses to Each.**

The OFM seeks breach of contract damages from the Tedards pursuant to the terms of a lease which terminated in August of 2004. The Tedards were the tenants and the OFM was the landlord. The OFM administered the property, a large structure in a residential neighborhood, under the terms of a trust arrangement which governs property seized by the U.S. from foreign countries. In this case, the owner of the property is the country of Iran.

The OFM seeks out tenants to occupy properties such as this which it holds in trust in order to obtain income to defray the heavy expenses of maintaining the properties. In this case, the Tedards and the OFM negotiated maintenance and repair provisions which resulting in a sharing of this expense, with the Tedards responsible for reporting any defects, damage, malfunctions, or breakage and keeping all parts of the premises in good repair, under a $200 deductible arrangement (i.e., tenant's own expense not to exceed $200 per repair).

These repair and maintenance expenses were substantial. Over a period of approximately six years preceding the lease at issue (when the parties were operating under similar lease terms), the OFM incurred necessary expenses of $125,000. In addition to that, the Tedards made substantial repairs on their own, which the OFM either neglected or refused to make or made incompetently.

Beginning in October of 2002 and continuing to the end of the tenancy in August of 2004, the OFM failed to carry out its end of the bargain. In February of 2003 the OFM stated that the bank accounts it would normally use to make repairs had been attached by plaintiffs in lawsuits against Iran for terrorism activities. In response, the Tedards told the OFM by phone that they would carry the OFM's expenses for a while and reconcile the account later. The OFM did not dissent.

In 2004, having incurred substantial expenses that should have been borne by the OFM, the Tedards tried to reconcile the account by offsetting these expenses against ongoing rental payments. The OFM refused, stating that their lawyers would not allow that. Eventually, the OFM terminated the lease and sued for damages. The Tedards have answered with affirmative defenses and a counterclaim which exceeds the OFM's claim but have stated that they will limit their damages to the amount necessary to offset the amounts in dispute under the OFM's claim.

The Court has denied a motion for summary judgment by the OFM, stating that material issues of fact remain with respect to the OFM's claims and the Tedards' defenses.

Essentially, the OFM is seeking damages from two separate sources. First, the OFM claims that the Tedards owe rent and fees for a period of several months in 2004. The Tedards claim that the OFM is not entitled to a recovery of these amounts because the OFM committed prior material breaches by defaulting on its repair

obligations beginning in October of 2002 and continuing to the end of the tenancy, thereby damaging the Tedards.

Second, the OFM seeks "restoration" damages in the amount of $11,572.84, claiming that the Tedards left the premises in a a state of disrepair beyond normal wear and tear. The Tedards vigorously dispute that they are responsible for <u>any</u> damage above normal wear and tear and claim that they left their security deposit ($3,500 plus accumulated interest since 1996) with the OFM, which was more than enough to cover any *legitimate* transitional expenses after they departed.

### Relevant Lease Terms Governing Repair of the Premises

The building which was under lease here was large and expensive to maintain and was in constant need of repair. In the first six years of the tenancy, the OFM spent approximately $125,000 on its repair obligations. The provisions governing repair obligations were material provisions of the lease.

The repair provision was discussed extensively over the years and was adjusted at each renewal of the lease. In the first lease period (1996-1999), the OFM was responsible for all "structural" repairs, which were defined in the lease to include, not just the structure, itself, but plumbing, heating, air conditioning, gas and electrical systems, kitchen appliances, and bathroom fixtures.

In the second lease period (1999-2002), the definition of "structural" remained the same, the OFM remained responsible for all structural repairs, and the tenants agreed to pay the first $100 of any other repairs, a deductible.

In the third lease period (2002 to the end), the OFM retained responsibility for the structural elements and increased the tenants' deductible for non-structural elements to $200.

The lease required the tenants to notify the OFM when repairs were needed but did not require the tenants to obtain any form of approval from the OFM before making repairs.

### OFM'S Breach of the Repair Obligations in the Lease

On October 7, 2002, the tenants notified the OFM of the current necessary repairs, most of which were "structural" as the OFM had defined that term in the preceding lease forms. The OFM did not respond to the notice and did not execute most of the repairs. On January 8, 2003, the tenants sent OFM a second notice, renoticing the structural repairs that had not been addressed from the October 7, 2002 letter and noticing new structural repairs that had arisen since October 7. The OFM did not respond to this second notice and did not undertake the noticed structural repairs.

On February 5, 2003, the OFM informed the tenants that the funds the OFM normally used for making repairs had been attached and it would be "some time"

before final judicial decisions might release the attachment. In response, William Tedards contacted the OFM by telephone and said that the tenants would carry the repair obligations of the OFM temporarily and settle the account later. The OFM did not reject Mr. Tedards' approach.

On January 9, 2004, the tenants reported $12,000 in expenses they had incurred to carry the OFM's obligations and opened a discussion to gain some reimbursement via crediting against rent payments. On January 14, 2004 the OFM refused, stating that its lawyers would not allow that to occur. The building continued to deteriorate during the spring of 2004, making it increasingly difficult to occupy the building and keep it up.

### The End of the Tenancy

On June 15, 2004, the OFM stated that the concept of crediting the heavy expenses the tenants were incurring to perform the OFM's repair obligations against ongoing rent was "not acceptable." On July 21, 2004, the OFM issued a notice terminating the lease as of August 23, 2004. The tenants vacated the building July 31 2004.

### The Post-tenancy Expenses

When the tenants departed they left their security deposit ($3,500 with accumulated interest since 1996) to cover transitional expenses for the OFM. This amount was sufficient to cover all legitimate transitional expenses (approximately

$4,000.) The OFM went on to spend approximately $7,000 more making repairs which were <u>not</u> attributable to the tenants, most of which the tenants had been asking the OFM to make for years.

Under contract principles, the tenants are entitled to total the damages they have suffered as a result of the prior material breaches of the OFM during the period October 7, 2002 through the end of the tenancy in 2004 and to offset those damages against the rent and fees for May 2004 through August 2004. The plaintiff OFM in its breach of contract suit is subject to the affirmative defense of prior material breach as well as the counterclaim. If "unjust enrichment" also applies, as the OFM suggests in its complaint, then the OFM is also subject to that claim as both an affirmative defense and a counterclaim.

With respect to the alleged "restoration" costs, the security deposit with interest was sufficient to cover the *legitimate* transitional costs. The OFM has no basis for attempting to charge the tenants with an extra $7,000 in repairs that could not possibly be attributed to the tenants.

**3.     Schedule of Witnesses**

    1.     William P. Tedards, Jr., 520.577.9877, 6380 E. Miramist Place, Tucson, AZ 85750). Detail on lease terms and discussions and correspondence with OFM. 1 hour.

    2.    Yvonne Tedards, 520.577.9877, 6380 E. Miramist Place, Tucson, AZ 85750. Details on OFM failure to make repairs 2002-2004; details on "restoration" costs; damages claimed. 6 hours.

**4.    List of Exhibits**

In addition to Plaintiff's Exhibits,

1.    Lease Agreements for the periods 1999-2002

2.    February 9, 2005 Tedards letter to DOJ Sonfield

3.    October 7, 2002 Tedards memorandum to OFM Miller (with attachments)

4.    January 8, 2003 Tedards memorandum to OFM Miller w/ October 7, 2002, revised Tedards memorandum to OFM Miller (with attachments)

5.    January 9, 2004 Tedards memorandum to OFM Miller (with attachments)

6.    January 14, 2004 Tedards letter to OFM Miller, w/ January 14, 2004 with 2003 Tedards repair/replacement costs

7.    November 30, 2004 Tedards letter to DOJ Sonfield(with attachments dated November 30, 2004, with 2003 Tedards repair/replacement costs, rev'd)

8.    August 31, 2004 Tedards letter to OFM Massey (with attachments)

9.    February 3, 2003, letter from the OFM to Tedards

10.    Compilation of 51 photographs of the premises in question

11.    Compilation of 103 photographs of the premises in question

12. Compilation of photographs showing hurricane landscape damage

13  All documents and photographs produced at Deposition of Yvonne Tedards, dated March 27, 2006.

14. All exhibits from Deposition of William P. Tedards, Jr., Vol. I, dated March 28, 2006.

15. All exhibits from Deposition of William P. Tedards, Jr., Vol. II, dated April 27, 2006.

**5. The Defendants seek $43,764.16 in affirmative defense set-offs/counterclaim damages.**

DATED: August 18, 2008                    Respectfully submitted,

WILLIAM P. TEDARDS, JR.

/s/

_____

William P. Tedards, Jr. (#143636)
6380 E. Miramist Place
Tucson, AZ 85750
TEL:  202 797-9135

YVONNE TEDARDS

/s/

_____

Yvonne Tedards
6380 E. Miramist Place
Tucson, AZ 85750
TEL:  202 797-9135